## North East Borough Appeal.

Argued December 17, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

reargument refused April 11, 1960.

*James P. Bryan,* with him *Bryan, Joslin and Bryan,* for appellant.

*William W. Knox,* with him *Knox, Weber, Pearson & McLaughlin,* for appellee.

OPINION BY RHODES, P. J., March 24, 1960:

This is a proceeding on a scire.facias sur municipal lien for sewer rentals.[1] The Borough of North East, Erie County, appealed from orders of the Court of Common Pleas of Erie County entering judgments in its favor in amounts substantially less than the original claims.

The Welch Grape Juice Company, Inc., appellee, operates an industrial plant in the Borough of North East for the processing of fruits. In 1934 the borough constructed an 8-inch sanitary sewer line connecting the Welch plant with the borough sewer system. This sewer line handles only the effluent from the rest rooms, the cafeteria kitchen, showers, and drinking facilities. Industrial waste, which the borough has refused to permit to be discharged into its sewer system, is separately disposed of by Welch at its own expense in its own industrial waste treatment plant or by discharge directly into a creek.

However, other industrial plants in the borough engaged in processing similar to Welch are permitted to discharge their industrial waste into the borough sewer system.

Two years after the construction of the sanitary sewer line, the borough passed an ordinance imposing an annual rental or charge for the use of its sewer system. The ordinance provided that the total annual

---

[1] The municipal liens state: "The name of the owner of the property against which this lien is filed is The Welch Grape Juice Company, Inc."

sewer rental should be equal to the total operating costs and should be "apportioned equitably" among the various users of the sewers in proportion to the amount of water purchased from the borough water department. It was then determined that the sewer rental be fixed at 20 per cent of the water charge.

Welch purchases a considerable amount of water from the borough which it receives from two lines, each of which has a meter. One of these lines supplies the fire protection system and the other line supplies water for all other uses in the plant. Approximately 95 per cent of the water was determined by the court below to be used for the processing of fruits and ultimately discharged into Welch's own treatment basin or directly to a creek. Approximately 5 per cent was determined to be that amount which was used for sanitary purposes and ultimately discharged into the borough sewer system. The borough charged Welch a sewer rental on the basis of the total water consumed or furnished to the plant regardless of its use. Welch apparently paid the charges through 1947. In 1948 and thereafter Welch protested the charge and the inequity of the industrial waste situation; it refused to pay sewer rental calculated at the total amount of water consumed in the plant. On January 9, 1951, the borough filed a municipal lien in the amount of $7,133, which consisted of the unpaid sewer rentals from January 1, 1948, to December 31, 1950; and, on December 11, 1953, it filed another lien in the amount of $10,584, comprised of the unpaid sewer rentals from January 1, 1951, to November 1, 1953. On December 9, 1955, a scire facias sur municipal lien was issued upon the first lien, and, on January 24, 1956, a scire facias was issued upon the second lien. Welch then appeared and challenged the charges. After the filing of various pleadings by the parties, a hearing was held; the court below then entered its initial decision and order

reducing the claims to $370.32 and $529.22, respectively. The reduction in claims was based upon the court's finding that the original charges were unreasonably disproportionate to the service rendered. Exceptions filed by the borough were dismissed by the court in banc. The borough then appealed to the Supreme Court which in turn certified the matter to this Court.

The borough presents two contentions: (1) That Welch should pay as sewer rental 20 per cent of the total amount of water consumed, regardless of the use made of the borough sewer system, and (2) that Welch is guilty of laches.

The construction, operation, and maintenance of a sewer system by a municipality is a proprietary function; as such the municipality is entitled to receive payment for the service which is rendered.[2] *Hamilton's Appeal,* 340 Pa. 17, 20, 16 A. 2d 32. The charge that is made for the sewer service must be based upon actual user, and must be reasonably proportional to the value of the service rendered and not in excess of it. *Hamilton's Appeal,* supra, 340 Pa. 17, 22, 16 A. 2d 32; *Gericke v. Philadelphia,* 353 Pa. 60, 62, 44 A. 2d 233. The practical problem of determining the amount of use of the sewer system by particular users and consequently the value of the service rendered has usually been resolved by relating the sewage charge to the

---

[2] The basic statutory authority for this function is the Act of May 4, 1927, P. L. 519, article XXI, §2101 et seq., as amended, 53 PS §47101 et seq. Section 2170 of the Act, as amended, 53 PS §47170, authorizes a borough to provide by ordinance for the collection of an annual rental or charge for the use of the sewer system. Section 2171, as amended, 53 PS §47171, provides for the computation of the annual rental, and states that it "shall be apportioned equitably among the several properties served by the said sewers, sewer system or sewage treatment works." The annual charge becomes a lien on the property involved and may be collected in the same manner as municipal claims. Sections 2172, 2173, as amended, 53 PS §§47172, 47173.

amount of water which flows into the property. Generally it has been said that "the amount of water which flows into a building is apt to be roughly proportional to what flows out as sewage. While there are exceptions without doubt, and while it might be more equitable to consider some further factors having to do with types of use, . . . [normally] a measure of sewer use based upon water use is [not] inequitable." *Philadelphia's Petition,* 343 Pa. 47, 50, 21 A. 2d 876, 878.

The Borough of North East has adopted water use as a measure of determining the sewer rental, which it fixed at 20 per cent of the water charge. The borough apparently applied this rate to all users, including Welch, whose industrial waste it did not receive into its sewer system, as well as to other industrial users in the same type business whose industrial waste it did accept into its sewer system. At the hearing Welch submitted engineering studies showing that for the years 1948 through 1953, for which the charges here involved were levied, the per cent of its total water consumption which was used for sanitary purposes and returned to the borough sewer system was from .7 per cent to 1.7 per cent of the total water consumed in the Welch plant for all purposes, including its industrial processing disposed of by itself.

The amount of water returned to the borough system from 1948 through 1953 was calculated by multiplying the actual number of employes shown on the payroll records for those periods by 25 gallons per day per person which was obtained from a recognized engineering handbook as the design sanitary waste factor per employe per day in an industrial plant. The method of computing the amount of water returned to the borough sewer system in those years was corroborated by the borough engineer and by a state health department engineer who doubled the basic gallonage per day per employe.

The amount of sewage per employe per day from this plant was further corroborated by an actual metering made in 1956 under conditions similar to those prevailing from 1948 to 1953. This metering showed an average of 21 gallons per employe per day during the processing season, except in the Christmas holidays when the gallonage increased to 52.2 per person per day. Assuming even 50 gallons per employe per day, the gallons returned to the borough sewer system would not increase beyond 5 per cent of the total water consumption; and the court below determined that such percentage should be the basis for the sewer rental charge. The evidence therefore substantiates the finding by the court below that 5 per cent of the total water consumed by Welch is returned to the borough sewer system. Based upon this finding the court recalculated the amount of sewer rental for each of the years, reducing it to 5 per cent of that originally claimed by the borough. In effect, the court calculated that amount of water which was used for sanitary purposes and returned to the borough sewer line, determined that it was 5 per cent of the total water supplied, and applied the ordained rate of 20 per cent of the water charge to arrive at the proper sewer rental. This method recognizes that the sewer charge must be based upon the actual use made of the borough sewer system by Welch.

If the borough contentions were correct—that regardless of the amount of the proven use of the borough system a consumer must pay 20 per cent of its total water bill as sewer rental—the charge would be in the nature of a tax rather than a payment for the service rendered. Sewer rentals are not taxes. *Hamilton's Appeal,* supra, 340 Pa. 17, 21, 16 A. 2d 32. That the borough's method of computing the sewer charge based upon total water consumption regardless of its use would result in an arbitrary, improper, inequita-

ble, and unlawful charge is demonstrated in this record by the fact that the borough accepts the industrial waste from other industries doing the same type processing as Welch and charges them 20 per cent of the total water consumption; yet it refuses to accept the industrial waste from Welch. Welch has consequently been required to dispose of its own industrial waste by its own treatment works which it installed at a cost of approximately $20,000. Moreover, in at least one other instance appearing in this record the borough has distinguished between water which is returned to the borough sewer system and water which is used for other purposes in making its sewer charge. It furnishes water to certain railroad companies at their standpipes as well as for their station use, nevertheless it makes no sewer charge based upon the water supplied to the standpipes.

As the court below concluded, the borough "cannot refuse to accept the Welch industrial waste, which embodies 95 per cent of its water intake, and then charge it on the basis of 100 per cent of the water intake."

The borough also contends that Welch is guilty of laches in raising the question of the improper calculation of the sewer rental. "Laches is a purely equitable doctrine which cannot be maintained in a court of law, unless redress for a violation of an equitable right is sought under common law forms in a court of law." *Pennsylvania Company for Banking and Trusts v. Philadelphia,* 167 Pa. Superior Ct. 637, 640, 76 A. 2d 443, 444. The application of laches, or a doctrine similar to it, in a proceeding on a scire facias sur municipal lien has been alluded to in *City of Pittsburgh v. MacConnell,* 130 Pa. 463, 466, 18 A. 645. Ordinarily, however, laches is applied in an equity proceeding and against the plaintiff, the one seeking affirmative relief, not against a defendant for failing to hasten an action against it. See *Schaszberger's Estate,* 52 York

109, 114; 30 C.J.S., Equity, §113, p. 523. The borough is the plaintiff or claimant in this proceeding, seeking to reduce its municipal liens to judgment; Welch is the defendant. Moreover, laches, unlike the statute of limitations, does not operate solely by the passage of time; a necessary and indispensable ingredient is prejudice to the party who asserts it. *Pennsylvania Company for Banking and Trusts v. Philadelphia,* supra, 167 Pa. Superior Ct. 637, 641, 76 A. 2d 443; *Lehner v. Montgomery,* 180 Pa. Superior Ct. 493, 501, 502, 119 A. 2d 626. The court below, taking cognizance of the rule that laches is ordinarily only applied in courts of equity, nevertheless considered the substance of the issue and determined that the borough had been made aware of the contentions of Welch concerning the inequity of the sewer charge as early as 1948, and that the borough was in no way prejudiced. The record supports its conclusion.

The claims in question were for the year 1948 and the following years. By various letters to the borough in the latter part of 1948 and the early part of 1949, Welch protested the inequity of the sewer charge because of the failure of the borough to receive its industrial waste. In one of the letters Welch notified the borough that it was refusing to pay the 1948 claim, and that it would contest any action which the borough would take to enforce collection. The borough budgets after 1949 have not included the estimated sewer rentals from Welch as anticipated receipts, nor have the delinquent sewer rentals been carried as assets of the borough. Notwithstanding that the claims were for the years beginning with 1948, the borough did not file its first lien until 1951, and it did not issue its scire facias until December, 1955. The initial scire facias filed by the borough was the means by which the claim was to be reduced to judgment; the purpose of the proceeding was to make the claim known

to Welch and bring it into court to present any defense which it might have against the claim. See *City of Scranton v. Genet,* 232 Pa. 272, 274, 277, 81 A. 335. Ordinarily the question of the validity of the claim can be determined only after a scire facias has been issued. *Borough of Berwick v. Smethers,* 105 Pa. Superior Ct. 40, 41, 42, 160 A. 148.

The borough argues that after the claim was filed in 1951, Welch could have served notice upon the borough to issue a scire facias in accordance with section 16 of the Act of May 16, 1923, P. L. 207, 53 PS §7184. See, also, section 14 of the Act of 1923, 53 PS §7182. A conclusion of laches from the possibility that Welch might have required the borough to issue a scire facias at an earlier date would have to be predicated upon a showing that Welch had knowledge of the filing of the municipal claim, which does not appear in this record, and a further showing that the borough was prejudiced by any unreasonable delay, the contrary of which is demonstrated in this record. The failure of Welch to require the borough to issue a scire facias at an earlier date does not in itself establish laches, since a lapse of time alone is insufficient to invoke the doctrine. See *Pennsylvania Company for Banking and Trusts v. Philadelphia,* supra, 167 Pa. Superior Ct. 637, 640, 76 A. 2d 443, where a ten-year delay on the part of a taxpayer in bringing suit for a refund was held insufficient to establish laches.

Any delay in bringing the merits of these sewer claims before the court cannot be said to have been caused by Welch or to have been prejudicial to the borough. When the scire facias was issued by the borough and Welch became aware of the claim, the latter acted promptly in interposing its defense.

The fact that the ordinance imposing the annual charge for sewer service was enacted in 1936 would not prevent a property owner from questioning the appli-

cation of the ordinance to service provided in a subsequent year. This proceeding is not an attack upon the ordinance per se. Welch, as we view it, has here questioned the method of application of the ordinance in the calculation of the annual sewer charge to it for the subsequent years in dispute. Its action was proper and timely.

The judgments are affirmed.