## Hickory Township *v.* Brockway et al., Appellants.

262

Argued April 17, 1963. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

reargument refused July 13, 1963.

*Philip E. Brockway*, with him *Brockway & Brockway*, for appellants.

*Donald R. McKay*, with him *Wiesen, Cusick, Madden, Joyce, Acker and McKay*, for appellee.

OPINION BY FLOOD, J., June 12, 1963:

The Hickory Township Ordinance fixes a uniform sewer rental charge of $50.40 per year for each residence (other than a trailer) in the township. Motels, however, are charged in accordance with a schedule which includes them in Class D, with restaurants, clubs, and trailer park central washrooms, and imposes a fixed charge for each receptacle upon the premises,

varying with the type of receptacle. The defendants refused to pay sewer rental for their motel on this basis, and paid a lower sum. The township filed a lien for the rental in arrears, followed by a writ of sci. fa.

The defendants filed an affidavit of defence which avers the following:

1. The sewer rental is arbitrarily fixed without regard to actual extent of the use of the sewage system.

2. The extent of the use of the system by the property owners in the township and the services and the benefits derived from it are in direct approximate proportion to the volume of water used or consumed on each premises since the water consumed constitutes the major volume of discharge and use of the sewer system.

3. The average amount of water used by domestic residential consumers in the area supplied by Shenango Valley Water Company during the years 1957 to 1961 was 6400 cubic feet per annum for which the users paid an average annual charge of $42.48. Such users pay a fixed annual sewer rent of $50.40 which is $0.007875 per cubic feet of water. During the same period the defendants used an annual average of 43,540 cubic feet of water in connection with their motel and paid annual water charges averaging $210.41. Their annual sewer charge, based upon the receptacle charge for buildings in Class D, is $571.40 which is $0.013124 per cubic feet of water used. The residential user thus pays 113% of his water rent for his use of the sewer system whereas the defendants pay 271% of their water rent for the use of the system.

4. The defendants use proportionately more of their water for sprinkling lawns and flowers and return less of it to the sewer than do the owners of private dwellings.

The township filed preliminary objections in the nature of a demurrer to the affidavit of defence. The objections were sustained and judgment was entered for the township. The defendants have appealed from that judgment, arguing that they have raised factual questions in their affidavit of defence which should be decided only after a hearing.

The method of determining the appellants' water rents by flat rates for each receptacle on the premises is the same as that approved by the Supreme Court in *Gericke v. Philadelphia*, 353 Pa. 60, 44 A. 2d 233 (1945). Therefore, the fact that some consumers are unduly favored, in itself would not require that appellants' rates be reduced. Since there is no allegation that their own rates are excessive for the service rendered, the appellants' burden is not merely to show that some residential owners are unduly favored, but that the entire system of rentals is inequitable so far as they are concerned. It is in this setting that their objections must be examined.

1. The appellants complain that the rental must be proportional to the actual use of the sewer system, but is not proportional in their case. For this they rely upon *Hamilton's Appeal*, 340 Pa. 17, 21-22, 16 A. 2d 32, 35 (1940). But what that opinion really says is that the charges (1) must be based upon "actual user of the system" and (2) must be "reasonably proportional to the value of the service rendered, not in excess of it". In *Hamilton's Appeal*, supra, the court struck down the proposed rental system primarily because of violation of the first of these two requirements. The so-called rental, it held, was in reality a tax, since it was based upon the assessed valuation of the property, even though the property made no use of the sewer. Thus a rental was charged for vacant lots, for buildings not connected with the sewer system and in other situations where no use whatever was

made of the system. It is obvious that this so-called rental was not based either upon amount of use of the system or upon any use of it since even though no use whatever was made of the sewer system a property owner had to pay a percentage of his assessed valuation. In *North East Borough Appeal,* 191 Pa. Superior Ct. 532, 159 A. 2d 528 (1960), in which this court repeated the statement that the charge must be based upon actual user, the property owner was compelled by the municipality to discharge the major portion of its sewage outside the borough system. As to it, the rental charge was held invalid.

Nor are these cases authority for the proposition that the rental must be proportioned with exactness to the use made of the sewers. What they say is that the charge must be "reasonably proportional", not to the use made of the system, but to "the value of the service rendered". *Hamilton's Appeal,* supra. See also, *Philadelphia's Petition,* 343 Pa. 47, 21 A. 2d 876 (1941). This value in the case of residences may be a different thing from what it is in the case of commercial buildings.

2. The appellant's argument that sewer rental must be based on water cost or on water consumption cannot be sustained. There are obvious cases where this would be unjust. *North East Borough Appeal,* supra. It is true that the Supreme Court in *Gericke v. Philadelphia,* supra, has said that a sewer rental based upon water rates, with proper allowance for exceptional cases, is proper. But it has not said that this is the only equitable method of fixing sewer rents.

In the *Gericke* case it appeared that the rental charged by the City of Philadelphia to properties with water meters averaged considerably less than that charged to properties without meters, which were charged a flat rate based upon the appliances or receptacles in the property. It was argued that the

rates, as between the two types of users, had no relation to the amount of water used and therefore were not equitable measures of the relative use of the sewers. The court said: "We must reject the contention that the apportionment between users paying by meters as a class and nonmetered properties which pay appliance rates is not an equitable apportionment . . ." *Gericke v. Philadelphia,* supra, at p. 67, 44 A. 2d at 236.

3. The appellants further contend that the facts set forth in their affidavit show that the rental charged to them is so far out of proportion to that assessed against residential users that it cannot be said to be equitably apportioned. They argue that the facts set forth as to relative water consumption and sewer rent indicate that they are charged at a much higher rate than the average residence as compared not merely to water cost, but to water consumption as well, and that this is clearly discriminatory.

The Supreme. Court has said that the fact that one property may use substantially more water than another similarly classified is not in itself ground for compelling a reduction of the rental to those properties which have fewer users or which use the water more economically. *Gericke v. Philadelphia,* supra, at p. 66, 44 A. 2d at 236. While the municipality can weigh such considerations, and no doubt should apply them in fixing rents, if the facts can be readily determined with reasonable accuracy, the Supreme Court has not said that the court can compel a municipality to assume the burden of examining the properties in a community one by one to determine the relative use made of the water supply.

The appellant in the *Gericke* case argued that a large family with the same number of receptacles would probably use a great deal more water, but pay no more, than a small family with an equal number of appliances where the rental is based upon flat receptacle

rates in an unmetered property. He also argued that under the flat rental, a wasteful user would pay no more than the economical user. These arguments were rejected by the lower court in the *Gericke* case and this holding was approved by the Supreme Court. In discussing the apportionment between users with metered water and those without, the Supreme Court said, at page 67, 44 A. 2d at 236: "The diversity of use and circumstances and the varying quantities used by members of a class are elements which, as the legislature understood, cannot be measured with mathematical exactness . . .".

The appellants also argue that the few premises not having metered water service could be charged a rental based upon average water consumption, or meters could be installed in them. There is nothing in the pleadings to show that only a small number of properties are not metered and the plaintiff in its brief says that the statement that their number is small is contrary to fact. The appellants do not argue that the municipality can be compelled by the court to require its citizens to install water meters so that the sewer rentals may be based upon metered water rents. In *Gericke v. Philadelphia,* supra, at p. 67, 44 A. 2d at p. 236, in passing upon the objection that the metered users paid a lower rate, the court said that "the unmetered property owner may at any time install a meter at a small outlay and pass into the other class". Thus the court approved a lower rate to metered users as a method of putting pressure upon all property owners to install meters, but at the same time approved rates not based, in any exact ratio, on water consumption. A sewer rental system will not be set aside because it is based upon flat water rents, provided the classifications upon which the flat rates are fixed are reasonable. *Gericke v. Philadelphia,* supra.

If, indeed, the appellants wish to be charged as residential owners they may find their charge increased rather than reduced. The ordinance provides, in the schedule of sewer rental rates as to residential properties, that "any room or group of rooms occupied or intended for occupancy as separate living quarters by a family or other group of persons living together or by a person living alone shall be classified as a dwelling unit." Upon this basis, if the property of the appellants were classified as residential, each bedroom in the motel could be separately assessed as a residence and the sewer rental for the motel instead of being $571.40 per year would be fifteen times $50.40, or $756 per year.[1] Classification of consumer units rather than according to ownership of properties was sustained by this court in *Brown v. Pennsylvania Public Utility Commission*, 152 Pa. Superior Ct. 58, 31 A. 2d 435 (1943). In that case this court said: "The fact that the owner of a property is the sole contracting party for water is not controlling in determining whether the consumer is entitled to a rate based on a single unit. Nor may the amount of water used be the correct criterion to determine whether a single unit rate is applicable. The use made of the property is an important factor to be considered in determining the proper applicable rates." This suggests that the various classifications other than residential may have been adopted for the purpose of charging relatively lower rents to commercial users of large amounts of water by charging them a receptacle rate rather than a flat rate for the entire building or for separate units thereof. Certainly it works to the appellants' advantage under the ordinance to have their property classified as a motel rather than as fifteen dwelling units. Con-

---

[1] While the pleadings do not indicate the number of rooms in the appellants' motel, they state in the history of the case in their brief that it is a fifteen unit motel.

versely, they might be complaining more bitterly if they were classified as residential.

4. The appellants also object that the rate of occupancy is not taken into account in fixing the rental, but they do not set forth their average rate of occupancy or of vacancy in their affidavit. There is no exemption for a residence which is unoccupied and we find no inequity or discrimination as against the appellants in not taking into account the rate of occupancy of their motel in fixing its sewer rate. A homeowner has no right to complain because the rental for the sewer, which is available to him, goes on even while the dwelling is vacant. No more can the appellants object to paying for the service to which they are connected and which is available when they need it. *Central Iron and Steel Co. v. Harrisburg,* 271 Pa. 340, 345, 114 A. 258 (1921). This is not the equivalent of a charge for the use of a sewer on a property not connected with the sewer. The method of classification which results in a rental considerably lower for motel units than private residential units, sufficiently allows for vacancies to avoid any finding of inequity. The rental for appellants' motel is only about 75% of what it would be for fifteen residential units.

5. There is no averment of discrimination as compared with other properties in their own classification —other motels, clubs or restaurants. The classification of commercial users as against residential users is prima facie reasonable. In *Brown v. Pennsylvania Public Utility Commission,* supra, at p. 62, 31 A. 2d at 437, this court said: "The use made of property is an important factor to be considered in determining the proper applicable rates." Nothing in the defendants' affidavit, if proved, would show that such classification is unreasonable in their case.

So long as properties in the municipality are properly classified, and there is no showing made that the

complaining rent payer is discriminated against as compared with other members of his own class, he has a very heavy burden if he wishes to upset or modify the rental by showing that he is discriminated against with regard to members of some other class. He has not set forth facts sufficient to sustain that burden in this case.

The difference between use of water on the defendants' property and that of the average residence is not necessarily greater than that between the residential user who is economical of water and the one who is not. The defendants, as commercial operators, are no doubt careful as to the amount of water they use and the amount of water rental which they are called upon to pay. However, the Supreme Court has indicated that this type of difference alone is not enough to make the water rents or the sewer rents discriminatory. *Gericke v. Philadelphia,* supra. And this court, in holding that a residential user had no right to demand meter rates rather than flat water rates, said: "Nor may the amount of water used be the correct criterion to determine whether a single unit rate is applicable". *Brown v. Pennsylvania Public Utility Commission,* supra, at p. 62, 31 A. 2d at p. 437.

The meaning of the phrase "equitably apportioned" is a practical one, arrived at in view of the impossibility of fixing an equal charge for equal service in the widely varying properties within a municipality. The parties in *Gericke v. Philadelphia,* supra, agreed that there was no meter which could be used to measure sewage and therefore it was necessary to find another standard by which to measure the annual charge to be made. Ibid. at p. 63, 44 A. 2d at p. 235. There is nothing in the pleadings in this case to indicate that any method of measurement has since been invented and the defendants do not claim that the sewage should or can be metered. Without such metering, precise apportionment cannot be had.

If the sewage cannot be metered, the apportionment must be on a basis that may appear rough and ready. The defendants have alleged no discrimination as to them with regard to other motels, restaurants or clubs in the township. While they urge discrimination under their averments as to relative water cost or water use with regard to residences, this would be so only if their motel is entitled to be classified as a single residence. However, they have averred no facts to show that the classification of motels separately from private residences is improper and the apparent discrimination is reversed when the comparison is made as to the sewer rental for separate dwelling units. The averments of the affidavit of defence, even if proved, make out no case for the proposition that, as to the defendants' motel, the sewer rentals are not equitably apportioned.

Judgment is affirmed.