## Greenville Borough v. Guerrini

*Michael Halliday*, for plaintiff.

*Robert F. Banks*, for defendants.

McKay, J., April 7, 1965. — This is a proceeding on a scire facias sur municipal lien filed by the Borough of Greenville against defendants to collect an assessment for sewer services. It was agreed by counsel at the

pretrial conference that the case should be heard by the court without a jury.

The facts are essentially undisputed, the question being one of law whether the rate charged was discriminatory.

Under Ordinance No. 736 of the Borough of Greenville adopted January 24, 1958, the borough provided for the furnishing of sewage service to the residents of Greenville and imposed a sewage rental upon owners at the rate of 115 percent, later reduced to 100 percent, of the amount of water consumed by the respective properties, the water being furnished by the Municipal Authority of Greenville. The ordinance also provided that domestic users of the sewage having a source of water other than the supply of the authority should pay sewer rental either by a water meter on his source of water or a quarterly sewer rental of $11.50.

In the case of rooming houses and hotels, the water authority requires the owner to install but one water meter to pay the water rent and the borough, in turn, imposes a sewer rental according to the water rent.

The building owned by defendants in question in this case is an apartment house converted from an old 11-room dwelling house.[1] The four apartments are distributed as follows: On the first floor there is one three-room apartment and a bathroom, and one two-room apartment and a bathroom; on the second floor there is one three-room apartment and a bathroom and one two-room apartment and a nearby bathroom.[2] For the purpose of the trial, the parties treated the building as consisting of the four units above named. There is also a laundramat in the basement, but the sewage for

---

[1] There is also a barber shop at the corner of the building which uses the sewage system, but we understand that it is not involved in the present proceedings.

[2] In addition, there is a single room on the third floor with no sink or wash basin.

it is charged for separately and it is not involved in this action.

During the period for which the sewage rental herein involved accrued, i.e., January 1, 1958, to January 1, 1962, the various apartments were occupied by a variable number of persons. At times, one person occupied an entire apartment, while at other times, a family with two or three children occupied it. The average number of persons in all four units was seven. Twelve persons was the highest number who lived in all four apartments at any one time.

Defendants take the position that the entire building is essentially one unit, similar to a rooming house, and have offered to install a water meter on their source of water and pay for sewage rental on that basis.

The borough has rejected this offer and contends that there should either be a meter for each of the four apartments or, since defendants have refused to provide meters, that they must pay the quarterly minimum rental of $11.50 per apartment. The total amount involved is $736.

The enabling act under which the ordinance was adopted is the Act of May 4, 1927, P. L. 519, sec. 2170, as amended, 53 PS §47170, et seq. The act provides that when a borough has constructed a sewer system, it may provide by ordinance for the collection of an annual rental or charge for its use from the owner of the property served by it: Section 2171, 53 PS §47171. It there states: "The said annual or fixed sum shall be *apportioned equitably* among the several properties served by the said sewers, sewer system or sewage treatment works." (Italics supplied.)

It is defendants' position that the amount charged them has not been equitably apportioned for the reason that their apartment house is not to be distinguished from a rooming house or hotel for which the borough permits installation of a single meter based on the water

used [3] and that they have offered to install such a meter.

On the other hand, the borough contends that each of the four apartments in defendants' property should be classed as a separate dwelling unit, and that this plan constitutes an equitable apportionment of the sewer cost.

At the hearing, Leon E. Langford, a representative of the Chester Engineers, after qualifying as an expert in the field involved, testified that it was the common practice for municipalities to bill for sewage services on the basis of each dwelling unit, which is usually defined as one having sanitary features and that in the case of apartment houses, municipalities usually charge (i.e., it is their custom to charge) for sewage on the basis of the separate apartments; that ordinarily each apartment has a separate meter, but where large dwelling houses are converted into apartments, as in the present instance, or if it is not convenient, each apartment unit is customarily considered to be a separate user and that sewage rates are usually established on that basis in determining the number of users.

Apart from the opinion evidence of the witness Langford, there was no evidence produced by either party on the question whether the action of the borough in treating each of the four apartments as a separate unit or user in fixing its sewage charge was discriminatory.

Is an apartment house the same as a rooming house so far as concerns sewer rates? The dictionary is of slight value in this situation. Webster's New Collegiate Dictionary defines a rooming house as "A house in which furnished rooms or apartments are let to lodgers; a lodging house", and an apartment house as "A residential building containing a number of apartments". It defines apartment as "A suite or set of rooms, espe-

---

[3] There is no evidence that any Greenville hotels or rooming houses derive their source of water from their own wells as do defendants.

cially one occupied as a dwelling; sometimes a single room". In our opinion, the term "rooming house" in common parlance refers to a dwelling in which the owner rents out separate rooms to separate individuals primarily for sleeping purposes, whereas, an apartment house ordinarily means a building consisting of more than one dwelling unit, each of which units may be used by one or more persons as a general dwelling.

Under the statute, the cost of the borough's sewage system and upkeep had to be equitably distributed among the users of it. If the ordinance, or the practice of the borough under the ordinance, discriminates against apartment houses in favor of rooming houses when they are both of the same class, and this to defendants' financial detriment, the assessment is, of course, not only illegal, but unconstitutional.

The burden, however, is upon defendants to prove that such discrimination exists, and that any discrimination that does exist is against defendants' property as compared with other properties in its same classification, here, other apartment houses: Hickory Township v. Brockway, 201 Pa. Superior Ct. 260, 269.

Here, however, there is no evidence whatever in the record that supports defendants' averment of discrimination. It is well settled that the test of equitable apportionment of sewer rentals is upon the "value of the services rendered": Hickory Township v. Brockway, supra, at page 264. It is equally well settled that the term "equitably" confers discretion upon council in defining classes of patrons and the rates payable by any class: Gericke v. Philadelphia, 353 Pa. 60, 66. In our opinion, the Borough of Greenville has not abused its discretion in its method of regarding each of the four apartments in defendants' property as a single-dwelling unit for sewage rental purposes.

Finally, it should be noted that in the case of Brown v. Pennsylvania Public Utility Commission, 152 Pa.

Superior Ct. 58, where the question involved a rate charged for water in a house consisting of two apartments, it was held that a minimum charge was proper for each apartment. Apart from the authorities set forth above, the Brown case is determinative of the instant case, for there is no essential difference between water rates and sewer rates, so far as the question of equitably assessing the cost of the value of the use of the commodity is concerned.

Accordingly, defendants have failed to sustain their burden of proof that the charge set forth in plaintiff's lien is inequitable or discriminatory and judgment must be entered for plaintiff.

### ORDER

Now, April 7, 1965, the court finds that plaintiff is entitled to recover from defendants in the above-entitled case the sum of $736, together with interest thereon from January 1, 1962, and it is ordered that unless exceptions to this order are filed within 30 days after notice thereof, the prothonotary shall enter judgment in favor of plaintiff and against defendants in that amount.