## Pawkovich v. Borough of Kittanning

*George R. Kepple,* for plaintiffs.
*David C. Suckling,* for defendant.

HOUSE, *P.J.*, January 11, 1984—

## FINDINGS OF FACT

1. Plaintiffs are each the owner of a public laundromat in Kittanning Borough, Armstrong County.

2. Defendant is a municipal corporation located in Armstrong County.

3. Defendant operates a public sewage system within Kittanning Borough.

4. On July 28, 1982, defendant enacted Ordinance No. 270 of 1982.

5. Ordinance 270 became effective August 1, 1982.

6. Prior to August 1, 1982, the Borough's sewage customers were billed pursuant to the following schedule:

"Section 1. Meter Rates.

"(a) Minimum charge:

"Residential — For each private dwelling — one family or one family apartment unit — a monthly minimum of $4.10;

"Commercial — For each commercial establishment, office or enterprise, a monthly minimum of $8.15;

"Industrial — For each industrial establishment or enterprise, a monthly minimum of $16.25;

"Municipal — A monthly minimum of $8.15;

"(b) Consumption charge:

"Subject to the above minimum charges, for the first 50,000 gallons, or any part thereof, per month — $0.31 per 1,000 gallons.

"For all that quantity in excess of 50,000 gallons per month — $0.17 per 1,000 gallons."

Unmetered customers were billed as follows:

"Section 2. Flat Rates.

"(a) Residential. For each private dwelling — one family or one family apartment unit — a month-

ly minimum of $4.10. Subject to this monthly minimum, the rates for each family or family apartment unit are as follows:

"First opening, plain faucet — $20.10 per annum;

"Additional openings, each — $6.85 per annum.

"Note: a hot and a cold tap shall be considered as one opening.

"(b) Commercial, Industrial and Municipal. For each establishment, office or enterprise, a monthly minimum as follows:

"Commercial monthly minimum — $8.15;

"Industrial, monthly minimum — $16.25;

"Municipal monthly minimum — $8.15.

"Subject to these monthly minimums, the rates are as follows:

"First opening, plain faucet — $13.65 per annum;

"Additional openings, each $6.85 per annum.

"Note: A hot and a cold tap shall be considered as one opening."

7. Ordinance 270 amended the rate schedule as follows:

"Section 1. Metered Rates

"(a) For each water-metered customer or account there is hereby levied a minimum rental of $13.63 per quarterannual period plus an additional charge of $1.70 for each 1,000 gallons, or fraction thereof, of water used that period in excess of 8,000 gallons."

"Section 2. Flat or Unmetered Rates

"(a) Residential

"For each private dwelling, one-family or one-family apartment unit, without a water meter, there is hereby levied a rental of $17.04 per quarterannual period.

"(b) Commercial

"For each commercial establishment, office or enterprise, without a water meter, there is hereby levied a rental of $27.27 per quarterannual period."

8. Kittanning Borough had 1,369 residential sewage accounts which were not equipped with water meters and 452 residential sewage accounts with meters as of April 1983.

9. Kittanning Borough then had 226 commercial sewage accounts which were equipped with water meters and 64 commercial sewage accounts that were not equipped with water meters.

10. Kittanning Borough bills its sewage customers solely on the basis of factors related to the customers' consumption of water.

11. There is no feasible method of measuring sewage flow from particular premises.

12. Ordinance 270 was passed by Borough Council after consultation with Chester Engineers, Inc.

13. The firm of Chester Engineers also consults with the Borough relative to the management and operation of the sewage system.

14. Defendant's sewage disposal system originally was constructed in the 1950's.

15. The projected operating expenses for 1982 were $103,355 and lease rental payments were $42,265.

16. Chester Engineers recommended to Kittanning Borough that $82,000 in capital improvements be made to the sewage pump station.

17. Chester Engineers also recommended that the sewage rate structure be modified and amended.

18. The Borough Council rejected the initial recommendation of Chester Engineers and, after substantial revision, a new sewage rate schedule was adopted in Ordinance 270.

19. Under the new rate structure plaintiffs' sewage bills have increased approximately 800 percent.

20. Plaintiffs currently charge their laundromat customers $.75 for each washer load.

21. A portion of the water used by plaintiffs' laundromats evaporates on the premises and is not discharged in liquid form as sewage.

22. The discharge water from plaintiffs' laundromats contains few, if any, solids.

23. There currently exists no feasible means of segregating plaintiffs' waste water from the sewage of other users of the system and all sewage is treated in a single sewage treatment plant.

24. Plaintiffs could maintain their pre-existing margin of profit on laundromat operations by raising their rates to $1 per washer load.

## DISCUSSION

This case was originally brought in equity but was transferred to the law side of the court as an appeal under the Local Agency Law, 2 Pa. C.S.A. §105 et seq. There had been no proceedings before the local agency and so this court held a hearing de novo. Section 754 of the Local Agency Law provides:

(a) Incomplete record.—In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo. . .

Where the court holds a hearing de novo, the court sits as a nisi prius and must weigh the evidence. Philadelphia Board of Pensions v. Einhorn, 65 Pa. Commw. 144, 442, A.2d (1982). Where no hearing was held and a complete record was made before the agency, the court must determine if the agency's actions were an abuse of discretion or arbitrary and capricious.

In the present case, plaintiffs alternatively argue that the ordinance is either arbitrary or capricious or that it amounts to a confiscation of their property. Therefore, while this court must make a record and determine factual issues, we are confronted with the same scope of review as if this matter had not been heard de novo. The factual issues in this case are not substantially in dispute and, thus, the court is left to determine the validity of the ordinance.

Plaintiffs are authorized to appeal under section 752 of the Local Agency Law. That section provides:

Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to a court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedures).

This enabling section is different from the corresponding section of the Municipal Authorities Act, Act of May 2, 1945, P.L. 382, as amended. That section provides in pertinent part:

. . . Any person questioning the reasonableness or uniformity of any rate fixed by any Authority . . . may bring suit against the Authority in the court of common pleas . . . The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service.

The grant of authority to the court under the Municipal Authorities Act is extraordinarily broad. Under that act, the court may even determine the reasonableness of rates. Port Authority of Allegheny County v. Scott, 62 Pa. Commw. 631, 437 A.2d 502 (1981).

In the present case, however, the borough (rather than a municipal authority) bills the sewage customers and operates the sewage system. Thus, this

is not a case wherein the court has been granted the power to review and establish the reasonableness of the rate structure. Rather, the court is limited to the question of the validity of the ordinance.

Kittanning Borough provides sewage service to some customers who have water meters and some customers who do not have water meters. The water-metered accounts are billed for sewage costs on the basis of their actual consumption of water. Non-water-metered customers pay a flat fee for sewage service based upon an assumed rate of water consumption. (See Findings of Fact 6 and 7.)

In any event, Ordinance 270 clearly was intended to raise revenue to support the sewage system and, at the same time, to place more of the burden for paying for the system operating costs on the metered accounts.

It is undisputed that the ordinance enacts a fee schedule that provides for a uniform schedule of sewage charges for metered customers in the same class. These charges rise in direct proportion to increasing amounts of water used. Plaintiffs argue, however, that water usage alone is not a sufficient basis for equitably distributing the cost of providing sewage service because many factors may intervene and affect the quality of water actually discharged to the sewage system. They complain that the present ordinance does not consider those factors which come into play subsequent to the in-flow of water through the water meter.

Specifically, plaintiffs complain that the ordinance does not take into consideration the significant amount of metered water lost by evaporation on their premises and that the ordinance does not take into consideration the fact that their discharge water contains few solids and is easily treated. Plaintiffs do not dispute propriety of the use of water

consumption as an indicator of sewage utilization. In fact, they admit that such a factor may be a basis for allocating sewage costs. Gericke v. Philadelphia, 353 Pa. 60, 44 A.2d 233 (1945). Their argument is that, by virtue of the exclusion of other relevant factors from the determination of sewage costs, the defendant's ordinance does not apportion the costs of the system on the basis of actual use and that the ordinance thus violates section 47062 of the Borough Code.

That section provides:

Such annual rental may include the amount expended annually by the borough in maintenance, repair, alteration, inspection, depreciation, or other expense, of such sewer, sewer system or sewage treatment works, and may include interest on money expended or borrowed by the borough in the construction of the sewer, sewer system or sewage treatment works, or in the acquisition, enlargement or extension of the sewer or sewer system, and may also include an amount sufficient for the amortization of debt incurred by the borough for any such purposes, including the construction of sewage treatment works according to law. *The said annual or fixed sum shall be apportioned equitably among the several properties served by the said sewers,* sewer system or sewage treatment works. (Emphasis added.)

It is true that, to the extent feasible, the annual costs of providing sewage service may only be allocated based upon the proportionate use of the sewage system. Borough of Northeast Appeal, 191 Pa. Super. 532, 159 A.2d 528 (1960). Defendant argues, however, that the mandate to apportion the costs equitably means that members of the various classes of users must be treated equally and that it need not determine the actual cost of providing

sewege service to any particular customer. In short; defendant argues that it is only required to fashion practical and verifiable means of allocating the costs of the system.

In Greenville Borough v. Guerrini, 208 Pa. Super. 42, 220 A.2d 366 (1966), the Superior Court said at p.46:

This court has said, "The meaning of the phrase 'equitably apportioned' is a practical one, arrived at in view of the impossibility of fixing an equal charge for equal service in widely varying properties within a municipality." (Citation omitted.)

In the Guerrini case, the Superior Court was faced with the issue of whether an ordinance that recognized different classes of customers was valid. That court did not specifically deal with the issues of the costs of providing service to each individual customer, but the court certainly intimated that it was proper to deal with sewage customers as a class. Accordingly, if it is proper to allocate costs on the basis of class characteristics, it must be permissible to enact an ordinance that is generally equitable, but which does not exact charges which are precisely equal from user to user.

In Philadelphia Petition, 343 Pa. 47, 21 A.2d 876 (1941), at p.57 the Supreme Court remarked about the argument raised by defendant that it would not be feasible to determine sewage cost for every user considering all of the factors that may affect sewage flow and said:

The city maintains that there is no method of charging for sewerage service which can be exactly equitable to every owner and that a practical basis must be used. This may be conceded, and will be allowed for by the courts in a proper case.

It is manifestly clear then that absolute equality is not mandated by section 47062. All that is required

is that the sewage rental charge be reasonably related to the value of the sewage service rendered. Hickory Township v. Brockway, 201 Pa. Super. 260, 192 A.2d 231 (1963).

Plaintiffs cite Municipal Authority of Bloomsburg v. Bloomsburg Cooperative Canners, 203 Pa. Super. 393, 199 A.2d 502 (1964) to support the proposition that the amount of water loss should have been considered by defendant in allocating the costs. In that case, the Authority had expressly granted the cannery a reduction in sewage rent on the basis of water loss. The court therein found that given the established water loss, the reduction formula adopted bore no rational relationship to the actual sewage use and under the Municipal Authorities Act, the court modified the sewage rate schedule in accordance with the established water loss.

Clearly, the Bloomsburg case is distinguishable from the case at bar. That case simply stands for the proposition that *if* an authority grants a reduction, it must then employ a rational basis for the reduction which does not ignore established facts.

In the present case, there is no evidence that the Borough treated plaintiffs in an unfair or irrational fashion. Rather, the defendant treated all users in plaintiffs' class exactly alike. Moreover, until trial, it had never been established that plaintiffs had any evaporative water loss. Defendant can not in these circumstances be found to have disregarded known facts in adopting the present ordinance or billing the plaintiffs.

Plaintiffs assert that they incur approximately an 18 percent evaporation loss due to the nature of their business. However, this figure represents merely the national average of evaporation losses as derived from industry sources and may or may not correspond to plaintiffs' actual evaporation loss. The

fact also distinguishes this case from the Bloomsburg case. In this case plaintiffs argue that the ordinance is inequitable because defendant borough did not consider evidence relative to the actual use of the sewage system, yet plaintiffs' actual water evaporation losses have never been established.

Most importantly, plaintiffs did not establish that their evaporative water loss was more significant than water losses from that or other causes suffered by other commercial sewage customers. Therefore, absent a rational method of granting water loss reductions to every user in plaintiffs' class, the defendant Borough could not grant plaintiffs relief based upon their alleged water loss without violating its statutory duty to treat all the members of that class equitably. In Hickory Township (supra) the Superior Court recognized that the municipality probably should provide a mechanism in the ordinance to provide relief in exceptional cases, but specifically held that a court should not order the municipality to do so. In that case at p.266 the court stated:

". . . the Supreme Court has not said that the court can compel a municipality to assume the burden of examining the properties in a community one by one to determine the relative use made of the water supply."

Thus, in this case, the municipality will not be compelled to consider non-flow related factors and the ordinance will not be overturned on this basis.

Plaintiffs, however, also contend that the ordinance is confiscatory. While they do not support this proposition in their brief, it is assumed that they contend that the recent increase in sewage costs will "drive them out of business." Clearly, this argument is not supported by the facts as established at trial. Plaintiffs testified that by increasing their

charges per washer load to $1, the industry average, they will be able to maintain their profit margin. There is no evidence that the increase of sewage rates will cause them to leave the laundromat business or that their property is being confiscated in any way.

It may well be true that the increase of $.25 per washer load will cause an inconvenience to the public. It may even be true that the local government should promote rather than hinder the availability of these public laundry facilities. This is, however, a legislative decision and Kittanning Borough Council is accountable to the electorate for this legislative choice. A court may not intrude upon the legislative power of the defendant Borough simply because it concludes that a different alternative should have been selected by the municipal body.

Ordinance 270 of 1982 is neither arbitrary nor capricious and does not represent an abuse of discretion and the ordinance is not invalidated for those reasons.

The next issue raised by plaintiffs is that the rate structure allegedly creates a yearly surplus in excess of the funds necessary to cover the current costs of the system and that such surplus will be used to fund future expansion of the system. It is clear that only operating and maintenance costs may be collected by the municipality because only those costs relate to the actual use of the customer. Borough Code 47062.

However, plaintiffs' allegations are not supported by the facts. The only evidence appearing in the record relative to the alleged budget surplus was presented by a representative of Chester Engineers. That witness testified that certain "capital improvements" to the existing pump station and the sewage system as a whole would be required in the near fu-

ture. Moreover, he testified that alternative funding sources, such as grants, would be utilized to pay for expansions to the existing sewage facility, and that any surplus was to be used in 1983 to make repairs to the sewage pump station.

However, in the years following 1983 the $21,788 expected surplus was budgeted for "unknown . . . capital addition work." Plaintiffs cite Holt v. Brookhaven Borough, 50 D.&C. 2d 211 (1970) to support the proposition that it is improper to create a fund for capital expansion from current receipts because the municipality can only charge customers for services actually rendered.

In Holt (supra) the court held that current charges could not be used to finance future expansion of the system. "Expansion" meant, in the context of that case, the expansion of the system to encompass new customers. In the present case, there is no evidence that the surplus would be used to finance the provision of sewage service to current non-users. On the contrary, it appears that the improvements mentioned by Chester Engineers are related solely to the renovation and repair of the existing system. Clearly, section 47062 of the Borough Code specifically permits the apportionment of charges for these purposes.

Thus, plaintiffs have not established that Ordinance 270 is invalid or unenforceable and the court therefore affirms defendant's actions and finds that plaintiffs are liable for the sewage charges as established by the ordinance.

## CONCLUSIONS OF LAW

1. Ordinance 270 of 1982 enacted by the Kittanning Borough Council on July 28, 1982, is not arbitrary or capricious.

2. Said ordinance is not confiscatory.

3. Said ordinance is a valid exercise of defendant's power and does not create an unlawful surplus.

4. Plaintiffs are legally responsible to pay the sewage costs as charged under the provisions of said ordinance.

## ORDER OF COURT

And now, January 11, 1984, upon consideration of the present appeal, the evidence, the briefs and arguments of the parties, and for the reasons contained in the annexed opinion, it is Hereby Ordered, Adjudged and Decreed that the decision of Kittanning Borough to deny plaintiffs relief from Kittanning Borough Ordinance 270 of 1982 is hereby Affirmed, based upon a determination that the above-mentioned ordinance is both Valid and Enforceable.