Merrimack
No. 86-051

## CONCORD STEAM CORPORATION

v.

## CITY OF CONCORD

November 7, 1986

*Orr and Reno P.A.*, of Concord (*Michael A. Pignatelli* and *Cordell A. Johnston* on the brief, and *Mr. Pignatelli* orally), for the plaintiff.

*Myers, Jordan & Duffy*, of Concord (*David W. Jordan* on the brief and orally), for the defendant.

BATCHELDER, J. This case arises out of a petition to abate sewer rent assessed against the plaintiff. RSA 149-I:15 (Supp. 1985). The Superior Court (*DiClerico*, J.) held that the method used by the City of Concord (City) in assessing sewer rates was unreasonable, unlawful, and unconstitutional as applied to Concord Steam Corporation (CSC), and the City appeals. We affirm.

CSC is in the business of producing steam and operates a steam generating plant in Concord. After producing the steam, CSC distributes it to its customers through underground pipes owned by CSC. In transit, a small percentage of the steam (known as "line loss") escapes from CSC's pipes and is discharged into the sewer. The balance of the steam passes through to the customers' pipes. CSC's customers then use the steam for various purposes, including heating and humidification, before the steam loses heat and condenses into water. Some of the condensate is recycled to produce more steam, or put to other uses. In most cases, however, the condensate is discharged into the sewer from the customer's premises after it is measured by CSC's condensate meter.

RSA 149-I:8 (Supp. 1985), entitled "Sewer Rentals," authorizes the City to establish a scale of sewer rents to finance the City's sewer system. Under this grant of authority, the City has adopted a scale of sewer rents. Concord Ordinance 9-3-5, in relevant part, provides:

"*Basis for Sewer Rents.* Sewer rents shall be based as follows:

(a) *Upon Metered Consumption of Water.* Upon the metered consumption of water on premises connected with the sewer system wherein the quantity of discharge is to be determined by the meter readings of the water department; or

. . .

(d) *By Contract Between Owner and City.* In all other instances where none of the above standards can reasonably be applied, an adjustment as to rent may be made by the execution of a contract between the owner and the city
. . . ."

For the most part, the City bases sewer rents on the amount of water delivered to the premises by the City as determined by meter readings. However, based on special circumstances, the City has individually contracted with several parties regarding sewer rents.

CSC purchases a substantial amount of water from the City—approximately 5.36 million cubic feet in 1983 and 3.67 million cubic feet in 1984—for use in its operations. Purportedly acting under the authority of Concord Ordinance 9-3-5(a), the City calculated CSC's sewer rent on the basis of 100% of the water purchased by CSC, although only a small percentage of that water (line loss amounting to 12.7% in 1983 and 13.6% in 1984, plus discharge from restroom facilities) was disposed of from real estate and drains owned by CSC.

CSC objects to the sewer rents charged by the City, arguing that it is unreasonable for the City to calculate CSC's sewer rent based on water consumption because CSC's customers, rather than CSC, are responsible for the condensate discharged from their premises and that the City may not lawfully use this method to calculate sewer rents in this case under Concord Ordinance 9-3-5 and RSA 149-I:8 (Supp. 1985). CSC attempted to negotiate a settlement of this issue with the City, but the City refused to adjust CSC's sewer rent, taking the position that CSC is responsible for the condensate discharged from its customers' premises. CSC then filed a petition in the superior court to abate the sewer rent. After determining that CSC's customers are responsible for the discharge of condensate into

the sewer from their premises, the trial court held that the City's method of calculating sewer rents, as applied to CSC, was unreasonable, unlawful, and unconstitutional under part I, article 12 of the New Hampshire Constitution.

The preliminary issue which we address is whether the evidence supported the trial court's finding that CSC's customers were responsible, as sewer users, for the discharge of condensate from their premises. Next, we consider the reasonableness and lawfulness of the City's method of calculating CSC's sewer rent. Because we find that the City misconstrued its own ordinance and misconstrued its statutory authority in calculating CSC's sewer rent based solely on water consumption, we do not address the constitutional question.

The principal issue before the trial court centered on whether CSC or the customer was responsible, as a sewer user, for the condensate that eventually passed into the sewer system after CSC had provided the customer with steam. The trial court found that the customer owned the steam purchased from CSC and was responsible for the discharge of condensate from his premises.

 The scope of our review of the trial court's findings of fact is narrow. Findings of fact will be upheld unless they are unsupported by the evidence or erroneous as a matter of law. *Zimmerman v. Suissevale, Inc.*, 121 N.H 1051, 1054, 438 A.2d 290, 292 (1981). Steam is tangible personal property. *Cf. Aldine Apartments v. Commonwealth*, 493 Pa. 480, 426 A.2d 1118 (1981). "Ownership has been defined as a collection of rights to use and enjoy property." *Trustees &c. Academy v. Exeter*, 92 N.H. 473, 485, 33 A.2d 665, 673 (1943). Testimony at trial indicated that once the steam passed from CSC's pipes into the customer's pipes, the customer had possession and use of the steam, and that after the steam cooled, condensing into water, the customer controlled its disposition. For example, the YMCA's decision to use some of the condensate to fill its pool rather than discharge it into the sewer was its own choice. Thus, the evidence supported the trial court's findings that the customer owned the steam and controlled its disposition.

However, the City argues that CSC controls the disposition of the condensate because it requires most of its customers to pass the condensate through a condensate meter prior to its disposition. This argument is not persuasive. "The measurement of the sale by weight or quantity of condensate following the consumption as steam is but an incident or means of determining the amount due on account of the sale." *Detroit Edison Co. v. State*, 298 Mich. 259, 263, 298 N.W. 525, 526 (1941). We affirm the trial court's finding that the customer rather than CSC owns the condensate and controls its disposition.

■■ Next, we consider the reasonableness and lawfulness of the City's calculation of CSC's sewer rent based on the quantity of water consumed on its premises. Sewer rental fees are charges "imposed because of one's use of the sewer system." *Seal Tanning Co. v. City of Manchester*, 118 N.H. 693, 699, 393 A.2d 1382, 1386 (1978); *see also Opinion of the Justices*, 93 N.H. 478, 39 A.2d 765 (1944). Sewer rents must be reasonable, *see* 11 E. McQUILLIN, LAW OF MUNICIPAL CORPORATIONS § 31.30a, at 221 (3d ed.), and "the key to a valid rental charge is use." *Seal Tanning Co., supra* at 700, 393 A.2d at 1386 (quoting *Giesel v. City of Broadview Heights*, 14 Ohio Misc. 70, 236 N.E.2d 222 (1968)).

■■ Generally, it is reasonable and appropriate for the City to calculate sewer rents based on the amount of water consumed on the premises served by the sewer system, RSA 149-I:8 (Supp. 1985); CONCORD ORDINANCE 9-3-5(a), because there is a high correlation between the amount of water consumed and the amount of water discharged into the sewer system. *See, e.g., Appeal of North East v. A Piece of Land, Etc.*, 191 Pa. Super. 532, 537, 159 A.2d 528, 531 (Pa. Super. Ct. 1960). Of course, there is not a perfect correlation between the amount of water consumed and that discharged, so the rents charged to various users of the sewer system will not be absolutely equal. However "the fact that absolute mathematical equality is not achieved does not render the system invalid." *Andrews v. Town of New London*, 117 N.H. 747, 749, 379 A.2d 441, 442 (1977).

■ The City calculates sewer rents based on the assumption that 75% of the water delivered to individual customers is discharged into the sewer. CSC discharges roughly 15% of the water delivered to it by the City into the sewer system. The balance is sold as steam to customers. Thus, there is a substantial disparity between CSC's use of the sewer system and the use that would be expected according to the City's 75% assumption. The trial court correctly concluded that, given the magnitude of this disparity, it is unreasonable for the City to calculate CSC's sewer rents based on the metered consumption of water under Concord Ordinance 9-3-5(a). *Cf. Appeal of North East supra* (Borough unreasonably charged fixed sewer rent of 20% of water bill when company discharged only 5% of water consumed into sewer). Concord Ordinance 9-3-5(d) requires the City to make adjustments as to rent, by contract, when other methods of calculating sewer rents are unreasonable. The City misconstrued its own ordinance when it refused to do so in this case.

■ Furthermore, the City misconstrued the mandate of RSA 149-I:8 (Supp. 1985) when it calculated CSC's sewer rent based on

the metered consumption of water. RSA 149-I:8 provides, in relevant part, that: *"Except in the case of institutional, industrial or manufacturing use,* the amount of such rents shall be based upon either the consumption of water on the premises connected with the sewer system, or the number of persons served on the premises connected with the sewer system, or upon some other equitable basis." (Emphasis added.) The City contends that RSA 149-I:8 (Supp. 1985) specifically authorizes it to calculate CSC's sewer rent based on water consumption. We disagree. When the language of a statute is plain and unambiguous, we will construe that statutory language according to its common and approved usage. *Dover Professional Fire Officers Assoc. v. City of Dover,* 124 N.H. 165, 169, 470 A.2d 866, 868–69 (1983). By excepting industrial uses from sewer rents based on water consumption or the number of persons on the premises, the legislature clearly recognized the need to examine such uses on an individual basis and required such examination. If the City were allowed to charge CSC, an industrial user of the sewer system, sewer rents based on water consumption without making adjustments for special circumstances, the statutory exception would be meaningless. "[E]xceptional situations established by legislation . . . are not to be curtailed by lessening the area of the intended scope" of the exception. *Young Women's Christian Ass'n v. Portsmouth,* 89 N.H. 40, 42, 192 A. 617, 618 (1937). RSA 149-I:8 requires the City to make an adjustment for CSC's special circumstances. Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.