Nov. 8, 1944. } No. 3500a.

OPINION OF THE JUSTICES.

On August 30, 1944, the Governor and Council adopted the following resolution:

"Whereas the Governor and Council have been advised by the Comptroller that the city of Concord acting under the authority

of an ordinance adopted by the Board of Aldermen August 9, 1943, entitled, 'An Ordinance Establishing Sewer Rents,' said ordinance being enacted under authority of the provisions of chapter 168, Laws 1941, has charged the State of New Hampshire for 'sewer rents' based on consumption of water by state institutions and the state house, and

"Whereas the Comptroller has refused to approve the payments of said 'sewer rents' on the advice of the Attorney General, that the provisions of said ordinance cannot be construed to apply to property owned by the State of New Hampshire, and

"Whereas no suit can be maintained by the said city of Concord against the State of New Hampshire to enforce collection of said 'sewer rents' if the provisions of said chapter 168, Laws 1941, and said ordinance do apply to property owned by the state.

"Now Therefore, Be it Resolved on motion duly made and carried that the opinion of the Justices of the Supreme Court be requested upon the following important question of law:

"Do the provisions of chapter 168, Laws 1941, and the ordinance adopted under the authority thereof by the Board of Aldermen of the City of Concord August 9, 1943, entitled, 'An Ordinance Establishing Sewer Rents,' apply to property owned by the State of New Hampshire?"

The following answer was returned:

*To His Excellency the Governor and the Honorable Council:*

Since the Comptroller is "under the general direction, supervision, and control" of the Governor and Council (R. L., c. 23, s. 13), we understand your resolution of August 30, 1944, to be in effect a request for our opinion as to whether you may direct the Comptroller to approve the account which the city of Concord has rendered for sewer rent and may then properly issue a warrant for its payment. Our answer to such an inquiry must be in the affirmative.

Section 1 of chapter 168 of the Laws of 1941, so far as applicable to the present situation, is as follows: "For the defraying of the cost of construction, management, maintenance, operation, reconstruction, replacement and repair of city sewers and sewer systems, including treatment and disposal works, and for the payment of the interest and principal on any debt incurred to pay such costs, the mayor and aldermen may establish a scale of rents, to be called

sewer rents, which shall be paid by the owner or owners of real estate connected by sewage drains with city sewers and sewer systems, or whose real estate receives special benefit therefrom in any way. . . . Such rents may be based upon the metered consumption of water on the premises connected with the sewer system, the number and kind of plumbing fixtures connected with the sewer system, the number of persons served by the sewer system or upon any other equitable basis. Funds raised from sewer rents shall be used only for the purposes prescribed in this section."

Section 3 provides that all charges for sewer rents shall become a lien upon the real estate served by the sewer system. Section 4 provides that any person willfully violating certain rules and regulations shall be fined. Section 5 restricts the application of the act to the cities of Concord, Laconia, and Portsmouth.

It should be noted at the outset that although the funds raised by authority of the statute may be used only for defraying the cost of construction, maintenance, operation, etc., of sewer systems, such funds are not to be obtained by levying a specific exaction but by establishing a "scale of rents" based in general "upon the metered consumption of water on the premises connected with the sewer system." The rates established by the ordinance here involved are generally so based, and the ordinance sufficiently conforms in all other respects to the statutory requirements.

The case of *State* v. *Hartford*, 50 Conn. 89, is typical of the cases on which the Attorney-General relies. In this case the city of Hartford laid a sewer along the street upon which certain real property belonging to the State of Connecticut was situated and assessed the State, "with other holders of real estate upon the street, for the special benefit conferred by the sewer upon their property." The Court, finding nothing in the provisions of the charter under which the city was acting which expressly or by necessary implication included the State as a party on whom assessments might be made, held that the State was not subject to the assessment in question.

Since a special assessment for a local improvement is in the nature of a tax upon property levied according to benefits conferred (1 Cooley, Taxation, 4th *ed.*, *s.* 31; *Manchester* v. *Straw*, 86 N. H. 390), the Attorney-General is correct in his contention that the principle of law which exempts the property of the State from taxation under general statutory provisions also precludes the imposition of a special assessment for improvements upon such property "unless

there is positive legislative authority therefor." 4 Dillon, Mun. Corp. (5th *ed.*), *s.* 1446.

But the difficulty with this contention, as here applied, lies in the fact that the price which the city charges for sewer service is in no sense a special assessment.

" A number of cases exist which present facts very much like those of the regular local assessment, but which differ from the local assessment in one essential fact. This essential difference is that in these cases it is optional with the party so charged to incur the liability by acceptance of the benefit for which the charge is made, or to abstain from such benefit and thus to be free from liability. Common examples of this are ordinances providing for furnishing water in part or all of the city to those who wish to take it, at a price fixed by the ordinance, where the persons who make use of the water are charged an amount, sometimes estimated at a lump sum, and sometimes based upon the amount consumed. Whichever form the charge may assume, the person who makes use of such commodity is under no legal obligation to do so, and does so voluntarily. Such a statute does not impose an assessment in the proper sense of the term, though the charge is often spoken of as a 'tax.' The transaction really amounts to an offer by the municipal corporation and an acceptance by the party who takes the water, thus forming a contract. The transaction then is substantially a contract of sale. . . . Another form of a charge which is in substance a contract is to be found where a municipality, under authority conferred by statute, imposes a charge upon property owners who connect their land with a sewer system constructed by the city, the owner being free to avoid liability by refraining from making such connection. Such charge may be a fixed sum for the privilege of making the connection, or it may be a charge based upon the amount of sewage discharged from the premises into the sewer. Such a charge is not ordinarily regarded as a local assessment." Page & Jones, Taxation by Assessment, *s.* 6.

Nor is this general rule here inapplicable merely because the city of Concord now makes a charge for a service formerly furnished free of charge. The city by maintaining its sewers through taxation did not impliedly bind itself never to establish compensatory rates (see *Carson* v. *Brockton*, 175 Mass. 242, 244), and the State has of necessity authorized the discontinuance of free service by permitting the establishment of sewer rents.

The case of *Grim* v. *Village of Louisville*, 54 Ohio App. 270, holds

that a municipal corporation may charge just and equitable rents for the use of its sewers to be paid by the owners of property served by connections therewith. In the course of the opinion it is said: "In the present case the village . . . is attempting to enforce, not a tax, not an assessment, not a special assessment, but a rental especially authorized by [statute]. . . . The village simply proposes to avail itself of a statutory right to maintain and operate a sewerage system constructed nearly twenty-five years ago."

In accordance with the weight of authority, we hold that the sewer rents imposed by the city of Concord are neither taxes nor assessments for a local benefit but, like water rates (see *Whitefield &c. District* v. *Bobst, ante,* 229), are charges made for a service rendered — charges which the consumer, by accepting the service, impliedly agrees to pay. *Provident Institution* v. *Jersey City,* 113 U. S. 506, 514; *Chicago* v. *Insurance Co.,* 218 Ill. 40, 43; *Powell* v. *Duluth,* 91 Minn. 53, 59; *Vreeland* v. *Jersey City,* 14 Vroom, 135, 136; *Silkman* v. *Commissioners,* 152 N. Y. 327, 331; *Hamilton's Appeal,* 340 Pa. 17, 21.

This rule is not restricted to private consumers but extends unquestionably to the State where the officials who accept the service have the power to act in the matter. 49 Am. Jur. 285, s. 74. We believe such power exists in the present case, for discontinuance of the service which the city is now rendering would affect disastrously the property served, and the Governor and Council, in whom rests ultimate authority over State institutions (R. L., c. 14, s. 1) are expressly authorized to make expenditures from the emergency fund to protect the State's interests. R. L., c. 27, s. 44. See, also, R. L., c. 14, s. 13.

But even if the State could compel the city to furnish the service without compensation (an assumption on which no opinion is expressed), we find nothing in the act under discussion which evinces a clear intention on the part of the State to do so.

Any suggestion that such an intention must be inferred from the fact that the statute has reference only to owners of property and persons served by the sewer system ignores the obvious fact that the State itself is an owner of property and disregards the rule of statutory construction which provides that the word "person" may be applied "to bodies corporate and politic as well as to individuals." R. L., c. 7, s. 9. Nor does the fact that certain provisions of the statute may not be applicable to the State furnish convincing evidence of an intent to except the State altogether from the operation of the act.

The failure of the Legislature to make an appropriation for the payment of sewer rents is of no significance. Chapter 168 became law only two days before the Legislature of 1941 finally adjourned, and it could not then be known whether the city of Concord would or would not avail itself of the authority which the statute conferred. As a matter of fact, the ordinance in question was not enacted until after the adjournment of the Legislature of 1943.

It is our conclusion that the State by continuing to accept the service rendered by the city after the enactment of the ordinance became obligated to pay the charges which the Legislature had authorized. Whether, as counsel for the city suggest, the State may be compelled to pay these charges by the institution of appropriate proceedings either in law or in equity is a subject on which our opinion has not been requested.

> Thomas L. Marble.
> Oliver W. Branch.
> Henri A. Burque.
> Francis W. Johnston.

November 8, 1944.

*To His Excellency the Governor and the Honorable Council:*

I think that we are not required to give an opinion.

First. I cannot avoid the impression that an opinion is sought by the City rather than by the State. Requests sent to us at the suggestion and for the convenience of others than the constitutional authority are not to be encouraged.

Second. As this matter is presented, it is substantially a controversy about existing rights as between the City and the State. They are in effect contrary parties, though in form they cannot be, since the State cannot be made a party to a suit against its will. Confessedly the controversy is not justiciable, yet the result of the opinion returned will undoubtedly amount to an adjudication of all rights concerning sewer rentals existing at the moment, and possibly all those that may "accrue" for the balance of the year and even longer. The determination quasi-judicially of existing rights in a non-justiciable matter is not the office of the constitutional opinion of the justices.

Third. We are presented with no solemn occasion for giving an

opinion as those words are used in the Constitution. The controversy hinges on the legislative intention, which admittedly has never been expressed in the sense of the opinion rendered, and, if implied at all, has been given only the most dubious hints. We are on the eve of a session of the Legislature. If we had not given an opinion, the controversy would soon come before the Legislature, which by clarification of the act (peculiarly within the legislative province), would undoubtedly settle it forever. If the clarification were in the sense of the opinion rendered, the Legislature could be trusted to provide for the payment of all rentals, past and future, and the City would not suffer unduly for waiting a very few months. If the clarification were otherwise, the City would lose no right. The Legislature may even now clarify the act, and contrary to the opinion expressed by this Court. They may disclaim that it ever occurred to them to let the City tap the State treasury for local revenue. If they should, the State will have lost beyond recovery whatever may have been paid in consequence of the foregoing opinion. Since the leaving of this non-justiciable controversy to the Legislature could not harm the City unduly, and since our going out of our way in effect to decide the controversy may result in irreparable injury to the State, I think it clear that a solemn occasion exists for declining to give an opinion.

ELWIN L. PAGE.

November 8, 1944.

*Henry P. Callahan* and *Robert W. Upton* (*Mr. Upton* orally), for the city of Concord.

*Stephen M. Wheeler*, Attorney-General (by brief and orally), in support of his advice to the Comptroller.