Hillsborough,
No. 5560, 5564.

JAMES BIGWOOD & *a.*

*v.*

MERRIMACK VILLAGE DISTRICT & *a.*

RICHARD M. DeNICOLA

*v.*

MERRIMACK VILLAGE DISTRICT & *a.*

Argued December 7, 1966.
Decided March 29, 1967.

*Stein, Cleaveland & Rudman* ( *Mr. Morris D. Stein* orally ), for the plaintiffs.

*Harkaway, Barry & Gall* ( *Mr. Aaron A. Harkaway* orally ), for the defendants.

PER CURIAM. These are two petitions for writs of mandamus to compel the commissioners of the Merrimack village district to

adjust their water rates as to the plaintiffs and for further relief. The fundamental issue in each proceeding is whether the charges against the plaintiffs made after July 10, 1962, are legal. The plaintiffs, the Bigwoods, are the owners of a trailer park presently containing thirty-seven trailers. The plaintiff DeNicola owns two apartment houses containing a total of eight apartments. Before the date in question, the Bigwoods were billed a service charge for one meter and DeNicola was charged for two meters. Subsequently, both sets of plaintiffs were charged upon the basis of one meter for each unit.

The *Bigwood* petition was reserved and transferred by *Dunfey*, J., upon a hearing, and the *DeNicola* petition was reserved and transferred upon an agreed statement of facts by *Morris*, J. It appears unnecessary to detail further facts in the *DeNicola* case, since they raise questions analogous to those in the *Bigwood* proceeding, and counsel have agreed that our decision in the *Bigwood* case should be determinative of the *DeNicola* petition.

Upon a hearing, the Superior Court dismissed the *Bigwood* petition and the plaintiffs excepted to the denial of their motion to set the decree aside. After the decree had been rendered, the plaintiffs orally requested findings and rulings, which incorporate the essential agreed facts, and are as follows:

" Petition for writ of mandamus to compel the Water Commissioners of the Merrimack Village District to adjust their water rates as to Petitioners' property consisting of a single residence and a number of trailers used by others; and, further, to compel the Commissioners to reimburse the Petitioners for charges from July 10, 1962 to date, which the Petitioners maintain were illegally implemented by virtue of the existing by-laws and action taken at the annual [district] Meetings of March 27, 1962 and March 26, 1963.

" The Court finds that under the by-laws as adopted at the time of the inception of the Water District and more specifically under Section 3-b thereof, the Commissioners were authorized and empowered to place a minimum service charge of $11.25 for each residence or single unit occupied by an individual, household or business enterprise, each unit to be treated as a distinct customer.

"Article 11 of the by-laws relating to amendments of the by-laws provided for amendments by majority vote of the

[district] Meeting and/or of the Commissioners of the District.

"The practice up to July 10, 1962 (notwithstanding terms of 3-b of the by-laws) in relation to the charges assessed against the Petitioners was to treat the Petitioner's trailer park as a single unit. As of July 10, 1962, the Petitioners had some 12 to 14 trailers using the water furnished by the Merrimack Village District. There are some 37 trailers now located on the premises of the Petitioners.

"On July 10, 1962, all users, including the Petitioners, received a letter from the Commissioners in which the Commissioners advised all users that from that date forward each trailer would be treated as a single unit (one family residence) under the provisions of Section 3-b of the by-laws and thus each unit would be subject to the minimum service charge, so-called. The Petitioners received notice of the upward adjustment on their property and have been charged in accordance with the terms of said regulation of July 10, 1962 to date.

"Under Article 9 of the two different warrants covering the [district] Meetings of March 27, 1962 and March 26, 1963 respectively, an attempt was made to exclude each trailer from coming under the provisions of 3-b of the by-laws and/or the regulation adopted by the Commissioners on July 10, 1962, or to change the basis for such charges if the owner made provisions for approved piping to all units feeding into one meter. Much discussion was had in relation to each article at both meetings, after which the subject articles were tabled.

"At the [district] Meeting of March 26, 1963, it was voted to amend Section 11 of the Village District by-laws by striking out that portion which authorized the Commissioners to amend the by-laws by a majority vote. Accordingly, the by-laws from that day to date can only be amended by a majority vote at the annual [district] Meeting.

"The Court finds that the adjustment of rates made by the Commissioners by virtue of its letter to all users of July 10, 1962 was in keeping with the authority which vested in the Commission under the provisions of the by-laws and more specifically Section 3-b and Article 11 thereof which were in effect at the time the new regulations of July 10, 1962 were promulgated by the Commission.

"It is further found that the action taken at the annual [district]

Meetings of 1962 and 1963 in no way modified or otherwise changed the regulation implemented by the Commission on July 10, 1962, inasmuch as the townspeople elected to table the subject article at each meeting. The action taken at the [district] Meeting held in March of 1963 stripping the Commissioners of their authority to amend the by-laws under Article 11 thereof is found to have no effect on the rate increases and other modifications encompassed in the Commission's July 10, 1962 letter, which were applied to all affected users within the District, inasmuch as the Commission was empowered to amend the by-laws at the time; and, accordingly, the amendment relating to the power to amend the by-laws approved at the 1963 annual [district] Meeting would in no way be construed to be retroactive.

"Construing the by-laws and the action of the Commissioners on July 10, 1962 relating to rate changes as a whole, together with the circumstances surrounding the [district] Meetings of 1962 and 1963, the Court finds that the Commission was empowered and authorized to take the action it did in relation to the Petitioners' property, they having substantially complied with the powers vested in the board under the by-laws and there being actual notice as to such changes in rates received by the Petitioners. Such action is found to be binding to date."

The plaintiffs saved no exceptions and made no motions during the trial. The only questions before us stem from the motion to set aside the decree as "against the law, the evidence, and the weight of the evidence." The only issues presented are those which may be fairly assumed from the record that the Court and parties intended to transfer (*Eastman* v. *Waisman*, 94 N.H. 253 ) or which are apparent upon the findings and rulings made. *Tyler Advertising Co.* v. *Lamprey*, 107 N.H. 138. The first question is whether the defendants are estopped to enforce the provisions of section 3-b of the by-laws of the district, which reads as follows: "Where an individual household or business enterprise, occupation or institution occupies more than one unit of space, each unit will be metered separately and considered a distinct customer." The by-laws relating to mercantile rates, under which the plaintiffs were charged, read as follows:

"Minimum Charge. For customers taking service on an annual basis, the quarterly charge under this rate shall be $11.25 in addition to the Fire Protection Charge. For short-term seasonal

or transient customers taking service for less than twelve months, the minimum charge will be $11.25 per quarter plus all costs of the District paid in advance in addition to the Fire Protection Charge. "

We agree that a municipal corporation may be estopped "like a natural person." *Lucier* v. *Manchester*, 80 N.H. 361, 362; *Monadnock School District* v. *Fitzwilliam*, 105 N.H. 487. In the *Monadnock* case, the court said that "estoppel rests largely on the facts and circumstances of the particular case." *Id.*, 489. The opinion then stated that the essential elements of an estoppel were:

"(1) A representation or a concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention that the other party should act upon it, and (5) the other party must have been induced to act upon it to his prejudice." *Id.*, 491, 492.

It is unnecessary to determine whether, upon the evidence, the Court could have found that estoppel existed, since it could accept or reject such portions of the testimony as it chose. *Clover &c. Co.* v. *Smith Co.*, 96 N. H. 491, 493. However, we are satisfied, upon a careful examination of the entire record, that it cannot be said that "no reasonable man could fail to find" that the plaintiffs had sustained their burden of proving estoppel. *Simes* v. *Atwell*, 85 N. H. 537, 538; *Perreault* v. *Lyons*, 98 N. H. 317. Among other facts, the by-laws were matters of public record. There was no evidence that the defendants concealed them from the plaintiffs or that the latter were unaware of their existence. The language of section 3-b seems entirely plain and indeed the word "will," construed according to the "common usage" (RSA 21:2), appears to be mandatory rather than permissive. 94 C.J.S., *Will, p.* 620.

If the commissioners, who had the powers of selectmen relative to operating the water district (Art. V, by-laws), for some undisclosed reason, or more likely, as the transcript indicates, because they felt the necessity for revenues was not pressing prior to July 10, 1962, did not choose to enforce section 3-b, their failure to do so was no representation that they never would apply it. The mere neglect to implement it did not repeal or

nullify the provision. See *Doe* v. *O'Brien*, 107 N.H. 79, 83; *District of Columbia* v. *Thompson*, 346 U.S. 100, 114-115; 82 C.J.S., Statutes, *s.* 296. In short, no finding of estoppel was compelled as a matter of law in favor of the plaintiffs, who had the burden of proof, and their exception upon this ground is overruled.

The matter of the authority of the commissioners to enforce section 3-b as of July 10, 1962, does not require extended discussion. The Court's findings in regard to this issue, as well as its other findings, are supported by the record. The disputed by-law was in existence when the plaintiffs first contracted for the services with the defendants, and they must be considered bound by a provision duly passed by the voters of the district, which under section 1-b was a condition of the agreement between them and the district.

Indisputably, both under the terms of the contract as well as impliedly, when the plaintiffs accepted the services, they agreed to pay for them. *Opinion of the Justices*, 93 N.H. 478, 482. All efforts at district meetings to modify or repeal section 3-b have failed, and the Court's findings that the provision was in force on July 10, 1962 and has continued so to be, are warranted.

It does not appear to us that the plaintiffs' motion raised other issues than those discussed. However, it may be noted that further arguments advanced in their brief rely upon the theory that the charges of which they complain were in the nature of taxes or assessments. This is not so. *Whitefield &c. District* v. *Bobst*, 93 N.H. 229; *Opinion of the Justices*, 93 N.H. 478, 482. It therefore follows that the cases cited by the plaintiffs to support their claims, such as *Frizzell* v. *Charlestown*, 107 N. H. 286 and *Bemis &c. Bag Co.* v. *Claremont*, 98 N.H. 446, are inapposite.

What we have said disposes of the issues properly before us, and the order in each of the *Bigwood* and *DeNicola* cases is

*Decree affirmed.*