70

GIESEL, A TAXPAYER, *v.* CITY OF BROADVIEW HEIGHTS ET AL.
MOSS, A TAXPAYER, V. CITY OF BROADVIEW HEIGHTS ET AL.

(Nos. 827487, 831031—Decided March 4, 1968.)

Common Pleas Court, Cuyahoga County.

*Messrs. Cippollone & Noble,* for plaintiff Giesel.
*Messrs. Miller, Folk & Schutz* and *Mr. Otto W. Schutz,* for plaintiff Moss.
*Messrs. Belovich, Mauk & Kulig, Mr. Cecil P. Mauk* and *Mr. Robert Belovich,* for defendant city of Broadview Heights.

ANGELOTTA, J. The plaintiffs, Kathryn A. Moss and Lois N. Giesel, were at the time of filing their petitions and at the time of trial, citizens, home owners and taxpayers of the city of Broadview Heights. Their legal positions were basically similar. The defendants are the city of Broadview Heights, a charter city; its Mayor, Raymond Fetzek; its Director of Finance, Marie Bender; and the individual members of its council as constituted on the date of the filing of the law suits. Also named as defendants are the city of Cleveland, which had a contract with the defendant, Broadview Heights, to extend water lines into the city of Broadview Heights and, further, to collect the extra charges imposed on residents of Broadview Heights who were users of such water; the Treasurer of Cuyahoga County, Frank M. Brennan; and the Auditor of Cuyahoga County, Ralph J. Perk, who are named defendants since nonpayers of the charges were subject to liens on their real estate and foreclosure procedure through such defendants.

On March 15, 1965, the Council of the city of Broad-

view Heights passed an ordinance No. 19-65, admitted into evidence as plaintiff Giesel's Exhibit C, which was titled as follows.:

"An ordinance authorizing the mayor to execute a contract with the city of Cleveland, Ohio, and its water department for the furnishing of water and permit extension of water mains in unsewered areas in the city of Broadview Heights, establishing charges therefor and declaring an emergency."

At that same meeting the council passed Ordinance No. 20-65, admitted into evidence as plaintiff Giesel's Exhibit B, which was titled as follows:

"An ordinance authorizing the city of Cleveland to charge and collect from each and every water user in the city of Broadview Heights each quarter an additional sum of one dollar ($1.00) for each one thousand (1,000) cubic feet, or fraction thereof of water consumed above three thousand (3,000) cubic feet."

On June 24, 1965, the council passed Ordinance No. 30-65, admitted into evidence as plaintiff Giesel's Exhibit A, which was titled as follows:

"An ordinance to amend Ordinance No. 19-65 authorizing the mayor to execute a contract with the city of Cleveland, Ohio, and its water department for the furnishing of water and permit extension of water mains in unsewered areas in the city of Broadview Heights, establishing charges therefor and declaring an emergency."

Each of the above ordinances was duly signed by the Mayor of the city of Broadview Heights.

On April 19, 1965, the city of Broadview Heights entered into a "Water Service Agreement" with the city of Cleveland, said agreement being a part of plaintiff Giesel's Exhibit C. By the terms of the agreement, there is imposed, in addition to the regular charges for water consumed, first, a charge of four and 25/100 dollars ($4.25) per quarter against each user of water supplied by the city of Cleveland. The contract provides that such funds would be collected by Cleveland by adding the amount of water billings, Cleveland to retain twenty-five cents ($.25) of such amount as its collection fee. A second charge of one

and no/100 dollars ($1.00) for each one thousand (1,000) cubic feet or fraction thereof of water consumed above three thousand (3,000) cubic feet per quarter was imposed.

It was provided also that the city of Cleveland should collect all charges. The fund accumulated by the first charge is to be held in escrow by Cleveland to assure Cleveland that it will be used to extend sanitary sewers in Broadview Heights. Provision is made in the contract that funds will be released when called on for such purpose. The second fund is remitted quarterly by Cleveland to Broadview Heights with no control reposing in Cleveland over the disposition thereof. The funds thus collected are known as the Water Pollution Abatement Fund.

The plaintiffs charge that the ordinances were passed in contravention of the requirements of the charter of Broadview Heights and in contravention of the Ohio statutes relating to ordinances, and further, that the city of Broadview Heights had no power to raise funds for sanitary sewers except as prescribed in the revised statutes of Ohio; that the method used here would not fall within any of the permissible methods prescribed by statute. Further, plaintiffs assert that the charges imposed by the ordinances and contract constitute a tax or assessment which is discriminatory in that it falls upon persons who use city water whether or not they have sanitary sewers and whether or not they have already been assessed for or otherwise paid for a sanitary sewer service. Further, it falls only upon users of Cleveland water and does, therefore, discriminate against such users to the advantage of nonusers.

Each of the plaintiffs made written demand upon the Law Director of the city of Broadview Heights asking that he apply for an injunction restraining said municipality from carrying into execution the terms of the water service agreement dealing with the charges to which the court has just referred. The law director not making said applications, each of the plaintiffs instituted a lawsuit on behalf of the taxpayers of Broadview Heights. On August 21, 1967, the court issued a temporary restraining order and advanced the two cases for trial.

The first argument put forth by the plaintiffs is that the ordinances in question are invalid because they were passed in violation of Sections 731.17 and 731.19, Revised Code. The former code section deals with the procedure to be followed in passing ordinances, including the procedure to be followed in suspending the rule requiring three full and distinct readings on three different days. The latter section contains the "one-subject" requirement and reiterates the requirements necessary for the passage of an ordinance. In each section there is the requirement that "* * * on the passage of each ordinance or resolution the vote shall be taken by yeas and nays and entered upon the journal."

In the instant case the vote upon both the suspension of the rules in each situation and upon the passage of each ordinance was recorded as 'Voted yeas all." The plaintiffs argue that yeas and nays must be individually recorded and they cite the case of *State, ex rel. Groghan,* v. *Rulon* (Common Pleas Court of Clinton County, 1960), 84 Ohio Law Abs. 464, for support. In the *Groghan case,* the vote was recorded as "Carried by full yea vote." The court felt that this entry did not constitute strict statutory compliance. The entry was ambiguous. It indicated that the ordinance passed, but it did not indicate how many members voted for the ordinance and how many, if any, voted against it. In the case presently before the court we know these facts. The minutes of the meeting disclose that all seven elected members of council were present. The entry on each vote was "Voted yeas all." If the word "all" is given its usual meaning, then the results of the vote are clear; seven "yea" votes and no "nay" votes. The statute requires that the vote count be entered on the journal. The court finds that this was done in the instant cases.

The plaintiffs also claim that Ordinance No. 30-65 is invalid for the reason that it was passed at a special meeting of council called and held contrary to Article III, Section 5 of the Charter of the city of Broadview Heights, which states in pertinent part:

"The mayor or any three (3) members of council may call special meetings upon at least twenty-four (24) hours

written notice to each member, served personally or left at his usual place of residence."

The claim is that no written notice was prepared or served. This court is of the opinion that even if such an omission was proved, which it was not in this case, it would not be an error prejudicial to the plaintiffs since all seven elected councilmen were present at the special meeting. This court agrees with the logical reasoning of the reviewing court in the case of *Young* v. *Village of Rushylvania* (Logan Co. Circuit Court, 1893), 8 Ohio C. C. 75, that where all members of a municipal legislative body assemble for a meeting other than a regular meeting,

"the criticism that the notice to meet was not in writing * * * becomes non-essential and technical only, and wholly without substance or merit."

The plaintiffs' third procedural objection concerns the fact that the titles of Ordinances No. 19-65 and No. 30-65 purport to declare an emergency, contrary to Article IX, Section 2 of the Charter of the city of Broadview Heights, which states in pertinent part:

"No action of the council authorizing any change in the boundaries of the municipality or the surrender or joint exercise of any of its powers or granting, renewing or extending any franchise or other special privilege, or contracting for the supply to the municipality or its inhabitants of the product or service of any utility, whether municipality owned or not, or regulating the rate to be charged for its services shall be designated an emergency measure. Any ordinance passed in violation of this section or Section 1, Article 9 procedure shall not become law under any circumstances or upon any date."

As support they cite the recent unreported case of *Wood* v. *City of Broadview Heights et al.* (Cuyahoga County Court of Appeals No. 28082). The *Wood case* is not applicable to the cases at bar for the reason that the case was concerned with a referendum petition and in such case there is a specific statutory requirement that titles be true and correctly stated.

An examination of the body of each of these two ordinances reveals that the ordinances themselves contained no

emergency clause and provide simply that each ordinance "shall take effect from and after the earliest period allowed by law." It is the opinion of the court that in this case the errors contained in the titles of the two ordinances do not serve to invalidate said ordinances.

The court then proceeded to examine the remaining allegations of plaintiffs' petition, which dealt with the validity of the charges authorized by the city of Broadview Heights.

It is the contention of the plaintiffs that Ordinances Nos. 19-65, 20-65, and 30-65 do not constitute valid sewer rental charges according to law. Section 729.49, Revised Code (Section 3891-1, General Code), provides in part:

"The legislative authority of a municipal corporation which has installed or is installing sewerage, a system of sewerage, sewage pumping works, or sewage treatment or disposal works for public use, may, by ordinance, establish just and equitable rates or charges of rents to be paid to the municipal corporation for the use of such services, by every person, firm, or corporation whose premises are served by a connection thereto."

The Ohio law is in accord with the following general proposition of law, as stated in 11 McQuillin, *Municipal Corporations*, Sewers and Drains, /247:

"The municipality may fix fees, rents, charges, and rates for making connections with and for using its sewers and drains outside the municipal limits as well as within and may, by law, have a lien on the property therefor."

Thus the issue before the court is not whether a municipality may authorize a sewer rental charge, but whether the city of Broadview Heights exceeded its statutory and constitutional authority when it authorized the collection of the charges in dispute.

Section 729.49, Revised Code, authorizes the charging of sewer rentals "for the use of such services by every person, firm or corporation *whose premises are served by a connection thereto.*" (Emphasis supplied.) While the statute allows a municipality to pass such an ordinance prior to installation of its sewerage system, it is clear that no rental can be collected before the premises in question

are served by a connection to said sewer facilities. The key to a valid rental charge is *use*. A charge may not be made to provide water and sewer service to vacant land.

In the case of *Grim* v. *Village of Louiseville et al* (Stark Co. Court of Appeals, 1935), 54 Ohio App. 270, which upheld the right of a municipality to charge a sewer rental fee, it is noted that the village of Louisville had operated and maintained a sewage disposal system for 25 years, and that the use of the system was available to the plaintiff in that action.

Decisions in other jurisdictions support this court's interpretation of the sewer rental charge. In the recent case of *State* v. *Bartos* (1967), 102 Ariz. 15, 432 P. 2d 713, the Arizona Supreme Court stated:

"We are of the opinion that the rental charge imposed for the use of the sewer is a charge for services rendered." 432 P. 2d 714.

In the *Bartos case*, the court stated that municipal rental charges for the use of a municipal sewer system are neither taxes nor assessments, but that they are charges made for the use of the sewers. Similarly, in *Opinion of Justices* (1944), 39 A. 2d 765, the New Hampshire Supreme Court stated:

"In accordance with the weight of authority, we hold that the sewer rents imposed by the city of Concord are neither taxes nor assessments for a local benefit but, like water rates are *charges made for a service rendered— charges which the consumer, by accepting the service, impliedly agrees to pay.*" (Citations omitted, emphasis supplied.) 39 A. 2d 767.

Defendant Broadview Heights cites the case of *Wilford* v. *Village of Elida* (Common Pleas Court, Allen county, 1961), 87 Ohio Law Abs. 331, for the proposition that where there is an existing sewerage system and the municipality is presently improving that system, a sewer rental tax is valid, although the improvements cannot presently be used. However, the *Elida case* can be distinguished from the cases at bar by the fact that in *Elida* the municipality had been maintaining and improving its own sewerage system. It had a statutory right to charge

a rental for its present maintenance of the existing sewerage system. In the instant cases there was no evidence presented showing any maintenance efforts on the part of the city of Broadview Heights and hence there can be no valid sewer rental.

The effort to build sanitary sewer lines and disposal plants by the method sought here to be employed is illegal because the statutes of Ohio specifically prescribe how such construction shall be financed.

Chapter 727, and more particularly Section 727.01, Revised Code, provides authority for a municipality to assess for the construction of enumerated public improvements, including sewers, which assessments may be made in one of the three following ways:

A. By a percentage of the tax value of the property assessed.

B. In proportion to the benefits which may result from such improvement.

C. By the foot front of property bounding on the improvement.

This statute governs the financing of sewer construction unless such construction funds are taken out of the general fund. Obviously Broadview Heights is not financing out of the general fund because the funds collected by the city of Cleveland are either retained by Cleveland in an escrow fund or kept by Broadview Heights (after remission from Cleveland) in a Water Pollution Abatement Fund.

The court also takes note of the seeming conflict between the following language found in the "Water Service Agreement" between the city of Cleveland and the city of Broadview Heights:

"In addition to the foregoing charges, Cleveland will bill and accept payments for the municipality of such additional charges as the municipality may set for customers located within its territorial limits. It is the obligation of the municipality to use such additional funds only for extraordinary repairs, *extensions*, public improvements and obligations of the municipality in connection with treatment, transmission and distribution facilities for

water or sewage located within the territorial limits of the municipality.'' (Emphasis supplied.)

And the last sentence of Section 729.52, Revised Code, which provides in pertinent part that surpluses in a sewer rental fund ''* * * *shall not be used for the extension of a sewerage system to serve unsewered areas. * * *'' (Emphasis supplied.) However, having ruled that the charges in question were not valid sewer rentals, the court did not proceed to examine this conflict.

Lastly, the court examined the charges to see whether or not they could be considered valid enactments under the taxing authority of the state of Ohio and the city of Broadview Heights. Article XII, Section 2 of the Ohio Constitution, states in pertinent part:

''No property, taxed according to value, shall be so taxed in excess of one percent of its true value in money for all state and local purposes, but *laws may be passed authorizing additional taxes to be levied outside of such limitation, either when approved by at least a majority of the electors of the taxing district voting on such proposition, or when provided for by the charter of a municipal corporation.*'' (Emphasis supplied.)

In the case of *State, ex rel. McCann*, v. *City of Defiance* (1958), 167 Ohio St. 313, the court held:

''* * * surplus revenue derived from the operation of municipal water works may reasonably be regarded as a tax levied upon water users and thereby subject to the legislative limits pursuant to Section 13, Article XVIII of the Ohio Constitution.''

To levy a tax beyond the ten mill limit requires special authority from the people or from the charter. Such authority does not exist in the charter of Broadview Heights, nor have the people of Broadview Heights been given an opportunity to give or withhhold the special authority by vote.

The court is in complete agreement with the expressed purposes of the ordinances in issue; the construction and expansion of sanitary sewer systems and the alleviation of water pollution. The latter problem particularly, is, today, a problem of immense proportions, and one that must be

soon resolved if we are to continue to enjoy the full benefits and utilize the full potential of the Greater Cleveland area. Municipalities are to be encouraged to seek ways to control and alleviate water pollution.

But equally important in the eyes of the court is the fundamental principle embodied in Article XII, Section 2 of the Ohio Constitution; that the electors shall make the final determination as to when, where, how, and if, their tax dollars shall be expended. This provision becomes all the more important today when we stop to realize the ever-increasing numbers of public endeavors that require our attention and money, and compare these needs with the ability of the average taxpayer, already heavily burdened, to finally support all of them. These decisions must rest with the taxpayer.

The designating of these charges as sewer rental charges does not alter their true character. In the case of *Himebaugh* v. *Canton* (1945), 145 Ohio St. 237, the court stated that a water rent charge may not be employed "as a mere device to lessen the burden of taxation for general governmental purposes." The court finds that this holding is applicable to the cases presently before it and therefore the relief prayed for in plaintiffs' petitions is hereby granted.

In view of the conclusion above, the claims of discrimination are not considered in this opinion.

The court having found the allegations of the plaintiffs to be well-founded and sufficient in law, pursuant to Section 733.61, Revised Code, does allow the plaintiffs their costs, and as a part of the costs does allow the plaintiffs reasonable compensation for their attorneys, the amount of said compensation to be determined by the court following the submission to the court of affidavits evidencing the time expended by counsel in this matter.

Plaintiffs' counsel to prepare journal entry.