Mr. Charles F. Speer, Esq. Counsel for Fairfax Drainage District 1700 City Center Square 1100 Main Street Kansas City, Missouri 64105
Dear Mr. Speer:
As counsel for the Fairfax drainage district (hereinafter district) you inquire whether the district may compel the City of Kansas City, Kansas (city) and the Kansas City board of public utilities (BPU) to pay a voluntary user fee for the use of your drainage system.
You indicate that currently all non-municipal entities which are benefited by their use of the system pay for such use through an ad valorem property tax. K.S.A. 24-407. However, because the city and the BPU are municipalities, they cannot be taxed on an ad valorem basis for property used exlusively by the respective municipality. K.S.A. 1992 Supp. 79-201a Second. On the basis of this exemption the city and the BPU have taken the position that there is no statutory authority for requiring or compelling them to pay for services provided by the district.
In contrast to this current position, the city and the BPU have a long history of cooperation with the neighboring drainage district as evidenced by various agreements and contracts. See Alber v. KansasCity, 138 Kan. 184 (1933) (the subject of the litigation involves a 1924 contract between the city and the district for a cost-shared project to provide sewerage [sic] and drainage for both territories); Interlocal Agreement between the City of Kansas City, Kansas and the Fairfax Drainage District Assuring Adequate Sewers to Provide Industrial Growth in the District, dated 1989 and filed with the register of deeds of Wyandotte County and the secretary of state's office pursuant to K.S.A.12-2904 and 12-2905.
Also filed accordingly and the most current evidence of cooperation between the city and the district is an amendment to the above interlocal agreement entitled Amendment No. 1, dated June 18, 1992 where the parties agree to create an advisory body to study problems of mutual concern and where the city agrees to provide additional funds to clean existing sewer lines within the district. Additional financial support subsequent to this last amendment's expiration is the subject of the present contention among the parties.
At issue is whether the district is authorized to charge a fee for the services it provides to the city, absent contractual consent. Conversely, we may address whether the city's property tax exemption also exempts the city from paying fees for services provided by the district. As a creature of statute, the district, a quasi-municipality, has only those powers provided by statute. Thus in order to determine whether the district is authorized to charge the city for its services under the circumstances, we must peruse the statutes creating the district and if necessary, discern legislative intent.
In the interest of brevity, we note that the drainage or sewer charge in question is not a tax or a special assessment. Rather the charge in question is in the nature of a rent or toll paid for services furnished. McQuillin Municipal Corporations sec. 31.30.10 (3rd ed., 1991). Seegenerally State v. Bartos, 102 Ariz. 15, 423 P.2d 713, 714 (1967);Bigewood v. Merriack Village District, 229 A.2d 341, 345 (1967).
Among the powers enumerated in K.S.A. 24-407 the drainage district may enter into contracts and may exercise its powers to accomplish the purpose for which the district was organized. More relevant to our question is the power found at K.S.A. 24-408 whereby the district may "contract or otherwise cooperate with any city or other municipal corporation . . . for the construction and maintenance of sewers."
Additionally the district may, as a taxing subdivision of the state, enter into contracts for the payment of service charges in lieu of taxes. These statutes clearly authorize a fee in return for services rendered when the parties enter into contract. However, they cannot be cited as authorizing the charge or fee in question absent a contract.
The absence of a contract was contemplated by the legislature. K.S.A.24-469 authorizes the presumption of a contract when the owner of a benefited property does not contract to pay for the benefits received. The owner of such property is "deemed to have made voluntary application to be included in such district" and non-payment for the service subjects the property owner to a lien on his property. If this benefited property is situated in another drainage district, the statute authorizes the prosecuting drainage district to make that drainage district the defendant instead of the owner of the benefited land, provided that the district court may assess an annual payment commensurate with the benefit in lieu of other judgment. It is thus readily evident that the legislature made provisions for an "implied contract" situation when one drainage district is receiving the benefits of the drainage of its land into the system of another district.
We can find no similar statutory provision authorizing a similar action against a city, although an implied contract argument can be made when a municipality avails itself of a benefit or a service from another municipality. 56 Am.Jur.2d Municipal Corporations, secs. 519, 524 (1971). See Opinion of the Justices, 93 N.H. 478, 39 A.2d 765, 767
(1944) (state as property owner responsible to pay sewer rents charged by the city based on an implicit agreement of payment upon acceptance of services); See also McQuillin, Municipal Corporations sec. 31.30.10 (3rd ed., 1991).
Contrary to reason but in accordance with the statutes, we must find that the district does not have statutory authority to charge a fee and compel the city and the BPU to pay the same. Although a harsh conclusion, we cannot from the powers enumerated in the district's statutes imply the authority for the sake of convenience. See
McQuillin, Municipal Corporations sec. 10.12 (3rd ed., 1991). However, we must also conclude that we find no authority for the proposition that a property tax exemption also exempts the city from paying for services provided by the district and voluntarily accepted by the municipality.See State Highway Commission v. City of Topeka, 193 Kan. 335, 337, 339
(1964) (the state's exemption from general taxation does not exempt it from special assessments for local improvements); see also, ExecutiveAircraft Consulting, 252 Kan. 421, 426 (1993) (fees are paid by choice; the party subject to the fee has the option of not utilizing the governmental service and thus avoiding the fee or charge.)
In summation it is evident from the perusal of the statutes empowering drainage districts that the legislature intended the parties in question cooperate for the provision of services and the payment therefor by entering into contract. In the absence of cooperation we must conclude that either litigation based on implied contract for the rendition of a proprietary service to a municipality, or legislative changes are in order. See generally, Drainage District v. Wyandotte County, 117 Kan. 634
(1925).
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Guen Easley Assistant Attorney General
RTS:JLM:GE:jm