KUBICKI et al., Appellants,

v.

NORTH ROYALTON, Appellee.■

[Cite as *Kubicki v. N. Royalton* (2000), 139 Ohio App.3d 127.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76158.

Decided May 15, 2000.

*Henry A. Stoken,* for appellants.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, *Robert J. Sindyla,* Assistant City Prosecuting Attorney, *Nicholas Phillips,* Law Director, and *Lisa Mehringer,* Assistant Director of Law, for appellee.

JOHN T. PATTON, Presiding Judge.

The city of North Royalton maintains several sewer districts. As relevant to this appeal, two of those districts are serviced entirely by a city owned system and are known as sewer districts "A" and "B". A third district, sewer district "C", has been serviced by the Northeast Ohio Regional Sewer District ("NEORSD"). In 1996, pursuant to a mandate by the Ohio Environmental Protection Agency, North Royalton began a $20 million project to upgrade its sewer system. As a way of recouping the cost of the project, the city passed legislation that consolidated district C with the other two districts and placed assessments on users located in district C. Upset with these assessments, a group of taxpayers located within district C initiated this taxpayer action seeking to have the city's consolidation of sewer districts declared unconstitutional as being beyond the city's statutory authority. Upon cross-motions for summary judgment, the court found the city acted within its authority and granted the city's motion for summary judgment.

The material facts are undisputed, so we review the issues as a matter of law. In 1961, the city created four sewer districts, among them districts A, B and C.

Districts A and B were served by treatment facilities located within in the city; district C was serviced by the Cleveland Southerly Wastewater Treatment Plant.

In 1972, the court of common pleas created NEORSD. The city was among those municipalities included within NEORSD, but "only that portion in the northeastern part of the City served by sewers connected to the Cleveland Southerly Wastewater Treatment Plant." This described district C. No part of district C is connected to or flows into city treatment plants for districts A or B. At one time, improvements were made to the treatment plants for districts A and B, but residents of district C were not assessed for those improvements.

When the Ohio Environmental Protection Agency informed the city it would have to upgrade the treatment plants for districts A and B, the city learned the improvements would cost $20 million. To fund the improvements, the city took out low-interest EPA loans and an Issue 2, low interest loan.

With the loans in place the city needed to figure out a way to repay the loans. The city examined the prospect of passing off the costs of those improvements to a wider citizen base and ultimately concluded that it should consolidate all the districts (including district C) and charge a uniform rate for sewer maintenance and operation. The new assessment for residents of district C requires residents to pay $35 per metered cubic feet of water, measured quarterly. The fees were proportioned as follows: $5.60 for maintenance, $20.45 for treatment, $6.86 for debt service, and $2.09 for repair/replacement.

Plaintiffs filed suit claiming the city could not purport to consolidate district C because it belonged in NEORSD. After extensive briefing by the parties on cross-motions for summary judgment, the court found in the city's favor for two reasons. First, that the city retained ownership of district C even after the creation of NEORSD. And second, that plaintiffs' district C properties are connected to the city sewers.

The two assignments of error are interrelated in that plaintiffs complain that the court erred by granting the city's motion for summary judgment and erred by denying their own motion for summary judgment. The first argument put forth on appeal is that the city cannot impose rates against residents of sewer district C for treatment facilities to which those residents are not connected. Plaintiffs maintain the city has no intention of running district C as part of its own sewer treatment facilities, and that no evidence in the record shows that district C will utilize in any way the city's existing sewer infrastructure.

The Supreme Court considered a very similar issue in *Huber v. Denger* (1988), 38 Ohio St.3d 162, 527 N.E.2d 802, and held in the syllabus that "R.C. Chapter 6117 authorizes a board of county commissioners to allocate the cost of a facility serving a portion of a sewer district among all residents of the district." In

*Huber,* the Greene County Board of Commissioners approved a resolution creating the Greater Greene–Little Miami Sewer District consisting of, among other areas, the Beavercreek and Sugarcreek areas. The Beavercreek and Sugarcreek areas were serviced by existing treatment plants that had interconnection. Residents in the district were charged uniform rates. The Beavercreek plant had been completed about ten years before the adoption of the Greater Greene–Little Miami Sewer District, and indebtedness associated with the construction of the Beavercreek plant had been retired. A new plant was built in Sugarcreek in the late 1970's, and part of the uniform rate charged to all residents was used to retire the indebtedness for that facility. A group of Sugarcreek residents brought suit against the Greene County Board of Commissioners alleging that the portion of sewer rates attributable to the Sugarcreek plant was illegal in that the residents derived no benefit from the plant and were not connected to the Sugarcreek plant. On appeal from a summary judgment granted to the county commissioners, the Supreme Court upheld summary judgment stating:

"It is apparent from a review of [R.C. 6117.02 and 6117.01] that the rates assessed for maintenance of the sewer works of a district are not dependent upon the fact that the ratepayer be physically attached to the particular facility for which debt servicing is required. Rather, reasonable rates may be charged to ratepayers for any facility operated and maintained by the district. * * * There is nothing in either of these sections which precludes a county from assessing a ratepayer for a treatment plant servicing another part of the district." 38 Ohio St.3d at 164, 527 N.E.2d at 804.

Plaintiffs attempt to distinguish *Huber* on grounds that it dealt with residents who, while part of an overall system, were not connected to the particular plant that benefitted from the additional assessment for retirement of indebtedness. Plaintiffs claim they are not connected to the city's facilities like the residents in *Huber* because they are serviced by NEORSD and have no connection to the city's treatment plants. In support of this argument, plaintiffs cite to R.C. 729.49, which states:

"The legislative authority of a municipal corporation which has installed or is installing sewerage, a system of sewerage, sewage pumping works, or sewage treatment or disposal works for public use, may, by ordinance, establish just and equitable rates or charges of rents to be paid to the municipal corporation for the use of such services, by every person, firm, or corporation *whose premises are served by a connection thereto."* (Emphasis added.)

■ Resolution of this question depends on two things: (1) the city's control over sewer district C and (2) whether the residents of district C are connected to the city sewer system. The answer to the first part lies in the city's authority to

exercise control over district C. We believe the city could validly incorporate district C into its sewer system, notwithstanding district C's exclusive reliance on NEORSD facilities to service district C. R.C. 727.48 gives sewer districts the discretion to "rearrange existing districts, establish new districts or sub-districts, or amend the general plan for the district * * *." The city's 1996 ordinances could include district C in its overall plan because the city has not relinquished ownership of district C to NEORSD. An amended plan of operation contained in a 1975 court order provided that NEORSD would not assume ownership of any local sewage collection facilities and systems unless specifically provided for, in writing, between NEORSD and the respective local community. There is no evidence to show the city entered into such an agreement with NEORSD. Hence, even though NEORSD continued to provide the physical plant for district C, district C remained a part of the city sewer district.

█ The answer to the second part is compelled by the answer to the first part. Plaintiffs claim a distinction lies between them, who are not connected in any way to the city system, and the *Huber* residents who, while receiving sewer service exclusively from one treatment plant, were nonetheless connected to the entire city system. But having found the city could incorporate district C into its overall sewer system, plaintiffs would be in the same position as the *Huber* plaintiffs because they would be part of a sewer system, yet not be connected to the particular facility to which the sewer district was applying the principal part of the sewer rates paid.

We further believe that it is of no consequence that the city does not intend to operate district C with its own physical plant. For all legal purposes, district C is part of the city sewer district, regardless whether the city's existing treatment plants service the district or NEORSD's treatment plants service the district. Being part of the city sewer system, not NEORSD, the residents of district C are connected to the city sewer system and subject to the rates the city establishes.

Plaintiffs' citation to *Giesel v. Broadview Hghts.* (C.P.1968), 14 Ohio Misc. 70, 43 O.O.2d 88, 236 N.E.2d 222, is not on point. In *Giesel,* the common pleas court held that a prerequisite to being charged a fee for water use was that the resident in question actually receive some kind of service; in other words, "a charge may not be made to provide water and sewer service to vacant land." 14 Ohio Misc. at 77, 43 O.O.2d at 92, 236 N.E.2d at 226. Aside from the erroneous assumption that an inferior court decision has precedential value over a court of appeals, the *Giesel* court's statement may not have any precedential value in light of a prior court of appeals decision in *Colley v. Englewood* (1947), 80 Ohio App. 540, 36 O.O. 315, 71 N.E.2d 524. In *Colley,* the appellate court held that residents with cesspools who did not use the village sewer system nonetheless were obligated to pay assessments for the sewer system because they received a

benefit from the establishment of the sewer system. So the *Giesel* court's statement cannot be considered to be a definitive statement of the law.

In any event, we are bound by the Supreme Court's statement in *Huber* that "the rates assessed for maintenance of the sewer works of a district are not dependent upon the fact that the ratepayer be physically attached to the particular facility for which debt servicing is required." *Huber*, 38 Ohio St.3d at 164, 527 N.E.2d at 804. Certainly, plaintiffs do not maintain they receive no sewer service whatsoever as did the plaintiffs in *Giesel*. We adhere to *Huber*.

■ Plaintiffs also complain that the assessments constitute a form of double taxation because the charges exceed the cost and expense of any service provided by the city. By their own citation to authority, "a 'fee' is in fact a 'tax' if it exceeds the 'cost and expense' to government for providing the service in question." *Granzow v. Montgomery Cty. Bd. of Support* (1990), 54 Ohio St.3d 35, 38, 560 N.E.2d 1307, 1310. In *Wooster v. Graines* (1990), 52 Ohio St.3d 180, 556 N.E.2d 1163, the Supreme Court quoted paragraph one of the syllabus to *Himebaugh v. Canton* (1945), 145 Ohio St. 237, 30 O.O. 471, 61 N.E.2d 483, for the proposition that:

"Water rates or charges or 'rents' collected by a municipality cannot be classed as taxes so long as their use is limited to the waterworks purposes enumerated in Section 3939, General Code; but if employed as a mere device to lessen the burden of taxation for general governmental purposes, such funds should be considered in the category of taxes."

Money from assessments can be used to retire sewer system indebtedness. See R.C. 729.52. Therefore, the assessment constitutes a "cost and expense" of maintaining the city's sewer system. There is no evidence to show that funds generated from the assessments are used for any other "general governmental purposes."

Moreover, having previously rejected plaintiffs' assertion that they are not a part of the city sewer system, we necessarily reject their argument that there is no reasonable relationship between the rates charged to them (which are devoted to improvements in other districts within the system) and services provided to district C. Being a part of the city sewer system, plaintiffs derive a benefit from the improvement of the sewer system as a whole, not just from the improvement of individual districts within the system.

■ In their final set of arguments, plaintiffs raise, due process, substantive due process and equal protection arguments. Because we have found the residents of district C were validly consolidated into the city sewer system, we are able to adhere to the general rule that constitutional issues should ordinarily be avoided if a case can be decided on some other basis. See *In re Boggs* (1990),

50 Ohio St.3d 217, 221, 553 N.E.2d 676, 680 (noting that constitutional issues should not be decided unless absolutely necessary). Our ruling that the city legitimately consolidated district C with other districts in the city obviates our need to consider these constitutional issues. The assigned errors are overruled.

*Judgment affirmed.*

SPELLACY and PORTER, JJ., concur.